391 So.2d 421 (1980)
STATE of Louisiana
v.
Freddie J. GIBSON, Jr.
No. 66657.
Supreme Court of Louisiana.
November 10, 1980.
*423 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, Patrick C. Leitz, Asst. Dist. Attys., for plaintiff-appellee.
Robert L. Marrero, Gretna, for defendant-appellant.
DENNIS, Justice.
We are called upon to decide when this Court may regard as harmless error the introduction in a criminal trial of evidence obtained by an unreasonable search or seizure. Defendant, Freddie Gibson, Jr., was convicted of armed robbery and sentenced as a multiple offender to serve fifty years at hard labor. Despite defendant's motion to suppress and timely objection at trial, the prosecution was permitted to introduce an unlawfully seized coat which, along with other legally obtained evidence, convincingly linked Gibson with the robbery. On appeal, we affirm. Although the coat should have been suppressed as evidence, its introduction was harmless error because the state has carried its burden of demonstrating that there is no reasonable possibility that the evidence complained of might have contributed to the conviction. Accordingly, we are able to declare our belief that the error was harmless beyond a reasonable doubt.
Early in the evening of December 27, 1977, a man entered the Chateau Drug Store in Metairie, Louisiana and ordered a pack of Rolaids. When the cashier rang up the sale, he brandished a pistol and ordered the cashier to empty the register. The robber fled the store in a 1965 blue Chevelle carrying $300 in cash. Within one or two blocks of the drugstore, he abandoned the car and proceeded on foot to the apartment of Nancy Schmitt, who was entering her apartment just at the time the robber approached. He moved her inside the apartment and held her at gunpoint for approximately one hour without harming her. Before leaving, he locked Mrs. Schmitt in the closet and took her car keys; he then absconded *424 with her blue Volkswagen. Shortly thereafter, Schmitt's husband came home, learned what had happened, and reported the events to the police.
About midnight on February 10, 1978, Officer Wilben Tank went to the La Quinta Motel in East New Orleans to pick up his wife who was completing her shift as night clerk. Mrs. Tank told her husband that the occupant of room 222 had made a number of long distance phone calls and that she was concerned he intended to leave without paying for them. The officer looked at the registration slip and discovered that the person registered in the room was Melvin Bounds. As the Tanks drove home, Mrs. Tank pointed out to her husband a Volkswagen in the parking lot which she had seen the occupant of room 222 driving. Officer Tank took down the license number with the intention of checking it out later.
Upon running the license number through the police computer, Officer Tank discovered that the car was stolen. He and another police officer returned to the motel to question Bounds about the automobile. The officers were unaware, however, that it was the vehicle which had been taken by an armed robber in December.
When Officer Tank knocked on the door of room 222, Melvin Bounds answered, but identified himself as Freddie Gibson. The officer, without identifying himself, asked Bounds to accompany him to the motel office to check on the telephone bill. While the officer stood in the hall outside the room, he saw through the partially open door Bounds place what appeared to be a gun in a closet to the left of the door. At this time, the gun did not cause the officer any concern. Bounds came out of the room and went to the office with the officer, all the while contending that his name was Freddie Gibson and that he was not registered for the room.
At the office, Tank pulled the registration slip showing that Melvin Bounds was the occupant of room 222. He asked for Bounds' identification, which Bounds produced, and the document demonstrated he was Melvin Bounds, not Freddie Gibson. Bounds then admitted his true identity, but contended that Freddie Gibson had checked in using Bounds' name. Tank advised him that he was a police officer investigating the theft of a blue Volkswagen parked in the motel lot near the room. Bounds protested that he owned a Datsun, not a Volkswagen, and asked Tank to inspect his Datsun registration papers.
Bounds led Tank and his fellow officer back to the motel room and showed them his Datsun papers. However, the officers noticed some Volkswagen keys lying on a television set. Convinced that they had probable cause, the officers arrested Bounds for receiving a stolen vehicle and advised him of his rights. They seized the keys and the gun they knew was in a closet roughly five feet from Bounds. Tank called his wife to determine if Bounds matched the description of the man she was concerned about.
When Mrs. Tank replied that the person they arrested did not resemble the driver of the blue Volkswagen, Tank and his partner concluded that there was another occupant of the motel room. They took Bounds to Central Lockup and returned to the motel with three or four other police officers to wait for the other person to arrive. While they waited inside the motel room, they received information that the stolen Volkswagen was connected with the December armed robbery. The officers waited inside the motel room from 1:00 a. m. to 4:30 a. m., at which time Freddie Gibson arrived and was arrested for armed robbery. Sometime during the waiting period, the officers observed a black leather coat in the closet which their information indicated might be involved in the robbery; the coat was seized and later used as evidence at trial.
Defendant unsuccessfully moved to suppress the pistol and coat before trial and futilely objected to their introduction during trial. He now urges two assignments of error stemming from the use of this evidence. He argues that his conviction should be reversed because it was based on evidence obtained by unreasonable searches and seizures.
*425 Any person adversely affected by an unreasonable search, seizure or invasion of privacy proscribed by our constitution may assert the invalidity in court. La. Const. art. I, § 5; State v. Culotta, 343 So.2d 977 (La.1976). Warrantless searches and seizures are unreasonable, absent compliance with one of the specifically defined exceptions to the warrant requirement. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1974); State v. Banks, 363 So.2d 491 (La.1978). Once a defendant makes an initial showing that a warrantless search occurred, the burden of proof shifts to the state to affirmatively show that the search is justified under one of the narrow exceptions to the rule requiring a search warrant. State v. Banks, supra; State v. Braud, 357 So.2d 545 (La. 1978); State v. Franklin, 353 So.2d 1315 (La.1978). Here, the state relies on the search incident to an arrest exception to validate the seizure of the pistol, and it asserts the plain view doctrine to justify the seizure of the coat.
A search incident to an arrest is one of the exceptions to the warrant requirement. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Essentially, the justification for the warrantless search of a person arrested for a crime is based upon the exigency of removing any weapons and of preserving any evidence within the immediate reach of the arrested person. Chimel, supra; State v. Blanchard, 374 So.2d 1248 (La.1979); State v. Breaux, 329 So.2d 696 (La.1976).
The officers had entered the motel room with the consent of Bounds, one of its occupants. Considering the information given them by Mrs. Tank, they had probable cause to believe that Bounds had taken or received the stolen Volkswagen when they saw its keys in his room. The arrest, therefore, was valid. The pistol the officers seized was in a closet about five feet from Bounds when he was arrested. It is unclear whether the closet door was open or shut, but Tank knew the weapon was there and apparently believed it was within Bounds' reach. The trial judge found that the pistol was within Bounds' immediate reach and ruled that the officers were entitled to seize it to insure their safety. We conclude that the evidence rationally supports his ruling.
As for the coat, however, the prosecution's effort to justify its warrantless seizure falls short. In order for a warrantless seizure to come under the plain view rule, three conditions must be satisfied: (1) there must be a prior justification for an intrusion into a protected area; (2) in the course of which evidence is inadvertently discovered; and (3) where it is immediately apparent without close inspection that the items are evidence or contraband. State v. Banks, 363 So.2d 491 (La.1978); State v. Parker, 355 So.2d 900 (La.1978). In this case, the officers' intrusion into the motel room that they knew to be occupied by someone besides Bounds was not justified after his arrest. They had gained access only by Bounds' consent for the purpose of inspecting his Datsun papers. Accordingly, their initial justification was limited by the scope of Bounds' consent. United States v. Dichiarinte, 445 F.2d 126 (7th Cir. 1971); LaFave, Search and Seizure: A Treatise on the Fourth Amendment, § 8.1, 628 (1978). Although they obtained and duly exercised additional authority to seize the weapon within Bounds' reach upon arresting him, the officers were not justified in occupying the motel room after completing the arrest and seizure. It was well after the arrest of Bounds before the officers received information indicating that the black jacket was evidence of armed robbery. Consequently, when the officers seized the jacket upon receipt of the information, they lacked one of the essential underpinnings for a plain view seizure, viz., justification for an intrusion into a protected area. The seizure of the black leather jacket did not fall within an exception to the warrant requirement.
Since there was other independent, substantially similar evidence which indisputably tended to prove that Gibson was the perpetrator of the armed robbery, we must consider whether the admission of the wrongfully seized coat was harmless error. Because the unreasonable search and seizure *426 violated both federal and state constitutional rights, it is our responsibility to apply the protections of both in searching for the correct harmless error rule for this case.
In deciding whether an error involving the denial of a federal constitutional right can he held harmless in a state criminal case, the reviewing court must apply federal law rather than state law. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Although there are some federal constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error,[1] others may be deemed harmless and not require the automatic reversal of the conviction. Chapman, supra. If the error is the kind that may be deemed harmless, the burden is on someone other than the person prejudiced by it to show that it was harmless. Chapman, supra.
Recent Supreme Court opinions contain varying formulations and applications of the harmless error test which have promoted confusion and inconsistent results. See Traynor, The Riddle of Harmless Error (1970); Field, Assessing the Harmlessness of Federal Constitutional Error-A Process in Need of a Rationale, 125 U.Pa.L. Rev. 15 (1976). In Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963) and Chapman v. California, 386 U.S. 13, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Court focused upon the erroneously admitted evidence (or other constitutional error) to ask whether there is a reasonable possibility it might have contributed to the conviction. The Chapman court also stated that "the court must be able to declare a belief that [the error] was harmless beyond a reasonable doubt." 386 U.S. at 24, 87 S.Ct. at 828, 17 L.Ed.2d at 710-711. In a series of later cases, the Court has suggested an approach which asks whether overwhelming evidence to support the jury's verdict remains once erroneously admitted evidence is disregarded. Milton v. Wainwright, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). Again the court must be able to declare the error harmless beyond a reasonable doubt. For example, in Milton v. Wainwright, supra, the Court found it decisive that its own "review of the record ... [left] no reasonable doubt that the jury ... would have reached the same verdict without hearing" the erroneously admitted testimony. 407 U.S. at 377, 92 S.Ct. at 2178, 33 L.Ed.2d at 6. Additionally, in Harrington v. California, supra, the Court gave some indication that admission of tainted evidence which is merely cumulative, i. e., merely duplicative of some remaining admissible evidence, may be harmless error. 395 U.S. at 254, 89 S.Ct. at 1728, 23 L.Ed.2d at 288.
This Court on two occasions expressly refused to deem harmless a violation of a defendant's constitutional rights simply because a review of the other evidence overwhelmingly indicated the guilt of the accused. State v. Herman, 304 So.2d 322 (La. 1974); State v. Michelli, 301 So.2d 577 (La. 1974). In those cases we said that our state constitution prohibited the weighing of evidence by this Court in criminal cases, and we interpreted Article 921 of the Code of Criminal Procedure to require reversal in any case in which there is a substantial violation of a constitutional right or a miscarriage of justice. Since then Article 921 has been amended to provide, in effect, that an error shall be deemed harmless unless it "affect[s] substantial rights of the accused." Our state constitution, nevertheless, still extends appellate jurisdiction only to questions of law in criminal matters. La.Const. 1974, art. 5, § 5(C).
*427 Accordingly, this Court is no longer required by statute to reverse a criminal decision if there is any constitutional error in the proceedings below, and it is no longer authorized to reverse upon finding that there has been a miscarriage of justice. This Court constitutionally, however, still may not act as a surrogate jury; it is not free to substitute its determination of what the jury, in the absence of the error, would or should have decided in place of the jury's actual verdict.
For these reasons we conclude that the federal harmless error rule, as stated and applied in Chapman v. California, is the standard most compatible with this Court's view of its own criminal appellate jurisdiction. Whether there is a reasonable possibility that the constitutional error complained of might have contributed to the conviction is a question of law to which our appellate jurisdiction extends. Although the standard requires a reviewing court to consider the evidence in order to determine if there is a reasonable possibility that the error had prejudicial effect, it does not permit a court to substitute for the verdict its judgment of what the jury would or should have decided in the absence of error.
Focusing on the incriminating quality of the tainted evidence is less intrusive on the jury's function than the overwhelming evidence test. Field, supra, 125 U.Pa.L.Rev. 15, 33 (1976). Justice Harlan, concurring in Bumper v. North Carolina, 391 U.S. 543, 552, 88 S.Ct. 1788, 1793, 20 L.Ed.2d 797, 804 (1968) reminds us that "[c]rediting or discrediting evidence is the function of the trier of fact." Whether there is a reasonable possibility that the error complained of might have contributed to the conviction is no more a question of fact than other rules applied by us routinely that call for careful consideration of the evidence.[2]
The Chapman harmless error approach is also more consistent with the notion that all accused persons are entitled to a fair trial, even if guilty. Injudicious application of the harmless error doctrine tends "to shield from attack errors of a most fundamental nature and thus to deprive many defendants of basic constitutional rights." Harrington v. California, 395 U.S. 250, 257, 89 S.Ct. 1726, 23 L.Ed.2d 284, 289-90 (1969) (Brennan, J., dissenting). Our Court has recognized that absent reversal, certain legal practices may continue unabated. Michelli, supra, 301 So.2d at 579. The Chapman court pointed out that a state court may err by giving "emphasis, and perhaps overemphasis, upon the court's view of `overwhelming evidence,'" 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed. 705, 710 (1967).
In addition, we feel that focusing on the impact of the error rather than the untainted evidence will give more guidance to the trial courts since our decisions would not be as closely tied to the facts of the particular case. See Field, supra, 125 U.Pa.L.Rev. at 36.
Although the Supreme Court has declared that a federal harmless error standard, rather than a state law, must be applied to determine whether a conviction for a crime should stand when a state has failed to accord federal constitutionally guaranteed rights, it has not specified which standard suggested by its opinions must be applied. In assessing Fourth Amendment violations and other infractions which may be deemed harmless, therefore, this Court will apply the federal standard which comports with its own appellate jurisdiction. *428 Additionally, we think that the Chapman rule provides a helpful supplemental guide in cases involving only errors of state procedure or state law. Our state constitution and statutory harmless error rule admonish a reviewing court generally to shun factual questions and to reverse only when substantial rights of the accused have been affected. In some of our recent decisions we may have come perilously close to violating both rules because of their lack of specific content.[3] It appears that the Chapman test, i. e., "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction" and that "the court must be able to declare a belief that [the error] was harmless beyond a reasonable doubt," will assist this Court to fulfill both of the requirements of state law.
Applying the Chapman standard to the present case, we conclude that the error committed by the trial court in permitting the state to introduce the coat which it had gained through an unreasonable search and seizure was harmless. The black leather coat was of limited value in connecting Gibson with the robbery. The garment was seized from the same motel room where defendant was arrested and identified as the culprit's by the store clerk and Mrs. Schmitt. However, the record does not reflect that it was anything but an ordinary black leather jacket. Neither witness was asked to explain how she could tell if it was the very same jacket that had been worn by the robber. Each reference to the garment was extremely brief and each identification devoid of any particular evidentiary facts. Consequently, we conclude that there was no reasonable possibility that introduction of the jacket could have contributed to the conviction. Furthermore, the state's proof that the defendant was the robber was very strong and in no way dependent upon the introduction of the jacket. Gibson was identified positively as the culprit by the drugstore cashier and Mrs. Schmitt, both of whom observed him at close range during the perpetration of his crimes. The gun found in his motel room was also identified by them as the one used in the robbery. When arrested, Gibson still had possession of the blue Volkswagen he had taken from Mrs. Schmitt. Accordingly, the state has carried its burden by showing that the possibility the introduction of the ordinary black leather coat might have contributed to the defendant's conviction was very slight and less than reasonable. It is our belief that its erroneous admission into evidence was, under the circumstances of this case, harmless beyond a reasonable doubt.
The defendant's remaining assignments of error present questions resolved by settled law and will be considered in an unpublished appendix. Because none of these assignments are meritorious, the defendant's conviction is affirmed.
AFFIRMED.
MARCUS, J., concurs and assigns reasons.
MARCUS, Justice (concurring).
Bounds, who was listed on the registration slip as the occupant of room 222, granted his consent to the police officers to enter the room. Hence, I consider that the officers had a right to be where they were when they inadvertently discovered the black leather coat which their information indicated might be involved in the prior armed robbery. I consider that the coat was properly seized under the plain view exception to the warrant requirement of the fourth amendment. I respectfully concur.
NOTES
[1] Chapman v. California, 386 U.S. at 23, 87 S.Ct. at 828, 17 L.Ed.2d at 710 ("our prior cases have indicated that there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error."). Justice Stewart concurring in Chapman noted that "constitutional rights are not fungible goods. The differing values which they represent and protect may make a harmless-error rule appropriate for one type of constitutional error and not for another." 386 U.S. at 44, 87 S.Ct. at 838, 17 L.Ed.2d at 722.
[2] E. g., this Court must consider the evidence in reviewing a trial court's decision to: (1) deny a defendant's motion for a new trial because newly discovered evidence probably would not have changed the verdict or judgment of guilty. La.C.Cr.P. art. 851(3); (2) allow the introduction of certain kinds of evidence, e. g., photographic, other crimes, because its probative value outweighs its prejudicial effects. State v. Gilmore, 332 So.2d 789 (La.1976); State v. Prieur, 277 So.2d 126 (La.1973); (3) deny defendant's motion for a new trial in a jury trial or for a judgment of acquittal, La.C.Cr.P. art. 778 (Supp.1975), in a bench trial when the defendant contends that the State presented "no evidence" on an essential element of the charged offense. State v. Peoples, 383 So.2d 1006 (La. 1980); State v. Walker, 369 So.2d 1345 (La. 1979). See State v. Douglas, 278 So.2d 485 (La.1973); Note, Criminal Procedure-Directed Verdict of Acquittal, 44 Tul.L.Rev. 594 (1970).
[3] See the cases below for examples of our Court finding errors harmless in view of the overwhelming evidence of guilt without acknowledging the inconsistency of this approach with our constitution and Michelli. E. g., State v. Berain, 360 So.2d 822 (La.1978); State v. Meunier, 354 So.2d 535 (La.1978); State v. Stripling, 354 So.2d 1297 (La.1978); State v. Williams, 347 So.2d 184 (La.1977); State v. Fort, 311 So.2d 851 (La.1975); State v. Ivy, 307 So.2d 587 (La.1975).