414 So.2d 674 (1982)
STATE of Louisiana
v.
Eddie LANDRY.
No. 81-KA-2095.
Supreme Court of Louisiana.
May 17, 1982.
Dissenting Opinion August 17, 1982.
*675 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Stephen Wimberly, Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
Louis A. Heyd, Jr., New Orleans, for defendant-appellant.
BLANCHE, Justice.[*]
Defendant was charged by bill of information with armed robbery. After a motion to suppress evidence was denied, defendant was tried and found guilty as charged by a twelve member jury and subsequently sentenced to fifty-five years imprisonment at hard labor. On appeal, defendant urges three assignments of error. The first assignment merits reversal; therefore, we need not consider the other two.
On August 1, 1979 an armed robbery was committed by two men at All American Jeans in Jefferson Parish. After shopping in the store for 15 to 20 minutes, the men proceeded to the cash register, presumably to pay for the pants they had selected. Subsequent events revealed that this was not their purpose for, upon reaching the register, the defendant pulled a gun from his shoulder bag, held it on the sales clerk and the cashier, and ordered the cashier to put the money in the register into a paper bag. Still unsatisfied, they demanded to know if there was a safe and, upon being informed there was not one, they took the bag of money and fled.
The circumstances surrounding defendant's arrest are found in our opinion in State v. Landry, 393 So.2d 713 (La.1981). We quote from the opinion as follows:
Defendant was initially approached by an officer in an unmarked car as he was walking down the shoulder of a road. The officer testified that defendant was not violating any law or engaging in any criminal activity at that time, but that defendant appeared to resemble the description of a suspect who was wanted for theft in another parish. When the officer, dressed in plain clothes, stopped his car on the shoulder, defendant apparently believed that he was being offered a ride, and approached the side of the vehicle. The officer identified himself and ordered defendant to the rear of the car. Defendant was carrying a shoulder bag, which the officer removed and placed behind him; the defendant was then frisked. Finding no weapons, the officer unzipped the bag, and discovered a pistol. He placed defendant under arrest. (Presumably, the search of the bag also revealed contraband).
In that opinion, we held that cocaine found in the shoulder bag should have been suppressed because the search of the bag without a warrant could not be justified as an incident of defendant's apprehension (stop and frisk). At the time the bag was searched, it was out of reach of the defendant, the officer had already discovered the defendant was unarmed, and defendant remained in the "frisk" position at the rear of *676 the car. After finding cocaine and a weapon in the shoulder bag, defendant was arrested and taken to the stationhouse where he was relieved of a gold chain with a Pisces medallion he wore along with a gold earring from his left ear. He was also photographed and, the following day a set of photographs, including that of defendant, was shown to the sales clerk at All American Jeans. She positively identified defendant. At trial, she made an in-court identification of defendant and, to put the "icing on the cake", the shoulder bag defendant carried, the medallion and earring defendant wore at the time of the robbery, and defendant's photograph were also introduced in evidence and identified.
At the time of defendant's initial stop and frisk, no probable cause existed to arrest defendant and none developed until after his unlawful search. For this reason, defendant argues that, but for the unlawful search and subsequent illegal arrest, his photograph would not have been taken and shown to the victim, nor would his personal belongings have been identified and offered in evidence. Thus, defendant argues that all of this evidence should be suppressed as "fruit of the poisonous tree", i.e. the defendant's unlawful arrest, Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). It is a fact that defendant's arrest was predicated on the unconstitutional search of his handbag without a warrant and that his photograph, and other items of evidence subsequently taken from him, were material to the issue of his guilt or innocence. It is also a foregone conclusion that any evidence obtained as a result of an unconstitutional and unlawful arrest must be excluded at trial unless it falls within one of the exceptions, because it is considered as "fruit of the poisonous tree". Brown v. Illinois, supra; Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); State v. Phillips, 347 So.2d 206 (La.1977). Wong Sun, supra, reminded us that "the exclusionary provision extends as well to the indirect as to the direct products of such invasions." The photographs taken at the stationhouse are included in the expanse of this rule.
There are three exceptions recognized to the general rule that evidence illegally acquired shall not be used at all. United States v. Crews, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980); Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920). None of these exceptions are applicable to the physical effects taken from the defendant and, indeed, the state does not claim that they areit lamely argues that they were in "plain view". Surely they were, but a prerequisite to the application of that exception to the warrant requirement is that it be immediately apparent without close inspection that the items seized are evidence or contraband. State v. Fearn, 345 So.2d 468 (La.1977). The state did not and could not have made such a showing. Consideration of these principles would have required the trial judge to suppress the gold chain with the Pisces medallion, the gold earring, the shoulder bag and the photographs which were taken after the arrest when he was "booked" into the stationhouse.
Because there was other independent evidence which proved that defendant was the perpetrator of the armed robbery, the crucial issue is whether the admission of the wrongfully seized evidence was harmless error.
The independent evidence was the strong, untainted, in-court identification of the defendant as the perpetrator of the crime. The victim identified defendant and stated, "I was very aware of what this guy looked like. I'm very observant. I've been doing this kind of work for three years, and I'm very observant to these people that walk in." When asked if she had any doubt, she responded, "I have no doubt at all. I remember his face. I remember his eyes, his nose, his mouth. I remember everything." The sales clerk observed the defendant for twenty minutes prior to the robbery and stated that, after he pulled the gun, she kept staring at his face because she wanted to remember what he looked like. She gave the police a description of the defendant *677 immediately after the robbery, and was able to furnish them with a sketch because she was a trained portrait artist.
At this point, it would seem that the prosecution should have been satisfied with the strength of the state's proof; however, the unlawfully seized evidence was then introduced. When the medallion was introduced, the the victim stated: "This is the Pisces necklace that he had hanging in [sic] his neck. I remember it so well because he didn't have a shirt on and I'm Pisces and it just kind of stuck on my mind." She also identified the shoulder bag and earring as those worn by defendant during the robbery, and indicated his photograph as the one she had chosen in an out-of-court photographic lineup. She stated she had positively selected defendant's picture at that time and proceeded to choose it once again out of the stack.
As noted above, the seizure of the foregoing items of evidence was illegal and prohibited under both the federal and state constitutions; therefore, the protections of each must be applied to determine if the error was harmless.[1] In deciding whether an error involving the denial of a federal constitutional right can be held harmless in a state criminal case, the reviewing court must apply federal law rather than state law. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Although the United States Supreme Court has declared that a federal standard must be applied when a state has failed to accord federal constitutionally guaranteed rights, it has not specified which standard suggested by its opinions must be applied. However, in State v. Gibson, 391 So.2d 421 (La. 1981), we adopted the standard used in Chapman v. California, supra, because it is the standard most compatible with this Court's view of its own criminal appellate jurisdiction. The Chapman test stated that, in order to find the error harmless, we must determine "whether there is reasonable possibility the evidence complained of might have contributed to the conviction" and be able to declare a belief that [the error] was harmless beyond a reasonable doubt. The approach used in Chapman is preferable to the "overwhelming evidence" test because, focusing on the incriminating quality of the tainted evidence is less intrusive on the jury's function and it is more consistent with the notion that all accused persons are entitled to a fair trial, even if guilty. State v. Gibson, supra.
In Gibson, we found that admission of the illegally seized evidence did not mandate a reversal because it was of limited value in connecting Gibson with the crime. The evidence in question in that case was an ordinary black leather jacket. At the trial, neither witness had been asked to explain how she could tell it was the same jacket worn by the defendant and each reference was extremely brief and devoid of any evidentiary facts.
In our view, the evidence complained of here was not merely a brief reference to a nondistinctive item of inadmissible evidence, but an extensive identification of unusual and personal objects which irrevocably established defendant as the robber. This Court cannot find the error was harmless just because there is other independent evidence of defendant's guilt because Chapman requires us to focus on the incriminating quality of the tainted evidence rather than the extent of the untainted evidence. Therefore, after reviewing the impact of the error, we feel there is a reasonable possibility the erroneously admitted evidence contributed to the conviction.
The state's harmless error provision is applicable because the seizure of the evidence also violated the Louisiana Constitution. C.Cr.P. art. 921 provides as follows:
A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity or variance which does not affect substantial rights of the accused.
The defendant's right to suppress evidence obtained pursuant to an unlawful arrest is unquestionably a substantial one. Although *678 the considerations applied under Chapman are not necessarily dispositive of the effect under state law of the introduction of this evidence, they do provide helpful guidelines. State v. Gibson, supra. Because we feel there was a reasonable possibility the evidence complained of contributed to defendant's conviction, we find its admission did affect substantial rights of the accused.
For the reasons set forth above, defendant's conviction is reversed and the case is remanded for a new trial in accordance with law.
MARCUS, J., dissents and assigns reasons.
BOWES, J., ad hoc, dissents and will assign reasons.
DUFRESNE, J., ad hoc, dissents and assigns reasons.
MARCUS, Justice (dissenting).
In view of the strong, independent and untainted identification of defendant by the victim, I consider the introduction of the physical evidence illegally seized was harmless. I respectfully dissent.
DUFRESNE, Justice pro tempore (dissenting).
I agree that the evidence obtained as a result of an unconstitutional and unlawful arrest must be excluded at trial. However, the victim made a strong, untainted in-court identification of the defendant as the perpetrator of the crime. Accordingly, I find the admission of the illegally seized evidence was harmless error and does not mandate a reversal.
Therefore, I respectfully dissent.
NOTES
[*] Judges Fred S. Bowes, Nestor L. Currault, Jr., and Edward A. Dufresne, of the Court of Appeal, Fifth Circuit, participated in this decision as Associate Justices Pro Tempore, joined by Chief Justice Dixon and Associate Justices Marcus, Blanche and Watson.
[1] This evidence was obtained in violation of Louisiana Constitution, Art. I, Sec. 5.