CURRAULT, Judge.
Initially, Phyllis Sterling was adjudicated in matters 59048 and 59043A by the Juvenile Court to be a child in need of supervision. This adjudication was pursuant to C.J.P. art. 13 § 13(c). On March 23, 1982, at the disposition hearing, she was placed on active probation for two years.
On June 23,1982, while on probation, she was petitioned in matter number 59043B as a delinquent for having allegedly violated LSA-R.S. 14:34 (aggravated battery) by stabbing one Sherry Johnson. On August 24, 1982, Sterling, through counsel, admitted the offense, and was adjudicated delinquent. She was committed to the Department of Corrections for a term of three years. This commitment was suspended and she was placed on active probation for a term of three years. Residential placement, however, was made a condition of the probation and on September 10, 1982, temporary custody of Sterling was awarded to the Department of Health and Human Resources/Division of Youth Services (D.H.H.R./D.Y.S.) for placement.
On September 15, 1982, Sterling was again petitioned as a delinquent for allegedly violating LSA-R.S. 14:67 (theft) by having stolen a bottle of cologne from Barkers on September 10, 1982. This became matter number 59043D.
On October 19, 1982, as a result of plea negotiations, Sterling admitted a violation of LSA-R.S. 14:27; 14:67 (attempted theft) and was adjudicated delinquent in matter number 59043D. At the disposition hearing on December 16,1982, Sterling was committed to the Department of Corrections for six months. This sentence was suspended and Sterling was placed on active probation for three years — the sentence and probationary period to run concurrently with that imposed under case number 59043B. Additionally, Sterling was to remain in the custody of D.H.H.R./D.Y.S. for placement in St. Elizabeth’s Home.
On January 5,1983, the probation department moved to have Sterling’s probation revoked in matter number 59043B (aggravated battery). A hearing was begun on January 18,1983, and concluded on January 24, 1983. As a result of the hearing, the judgment of disposition rendered on August 24, 1982 was modified in that the probation was revoked and the previously imposed commitment of three years in the custody of the Department of Corrections was ordered executed.
It is from the judgment of January 24, 1983, that the defendant, Phyllis Sterling, appeals.
Three assignments of error are presented for review.
ASSIGNMENT OF ERROR NUMBER 1
The following question is presented by the first assignment of error:
Was the defendant-appellant denied her constitutional right to call witnesses on her own behalf to testify for her in her defense?
LSA-Const. Art. 1, Section 16 provides in pertinent part: “[a]n accused is entitled to .confront and cross-examine the witnesses against him, to compel the attendance of witnesses, to present a defense, and to testify in his own behalf.”
Citing In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), the Louisiana Supreme Court observed in State in the Interest of Dino, 359 So.2d 586, 589 (La.1978), “[t]he Constitutional privilege against self-incrimination and the rights to counsel and to confront and examine witnesses are [as] applicable in the case of juveniles as they are with adult accuseds. [Footnote omitted].”
Although not expressly providing for compulsory process, this right was tacitly recognized at the adjudicatory stages of the proceedings by the adoption of LSA-C.J.P. art. 70 which provides, “[t]he child and his parents may introduce evidence, call witnesses, be heard on their own behalf, and cross-examine witnesses called by the state.”
*374 In State in Interest of Wright, 387 So.2d 75 (La.App. 4th Cir.1980), the court applied the minimum due process requirements of Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) and Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), to juvenile modification proceedings.
As established by the Supreme Court, these minimum requirements are:
(a) Written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a “neutral and detached” hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the fact-finders as to the evidence relied on and reasons for revoking [probation or] parole. Gagnon v. Scarpelli, supra, 411 U.S. 786, 93 S.Ct. 1761-62.
Accordingly, as the defendant was entitled to present witnesses at the modification hearing the right to compulsory process to obtain those witnesses is implied. The right to compulsory process is the right to demand subpoenas for witnesses and the right to have those subpoenas served — and in State v. Mizell, 341 So.2d 385, 388 (La.1976) the court observed that “the constitutional right to compulsory process for the attendance of a witness is not to be trifled with.”
The record reflects that on January 10, 1983, the defendant, Phyllis Sterling, in proper person requested subpoenas issued “Annie Smith”, “Sharron” and “Deborah Moore” for their appearance at the modification hearing set on January 18, 1983. At the time of the hearing, the court granted an oral defense motion for continuance, to the following day, in order to secure the appearance of these defense witnesses. Later that day the matter was reset to the 24th of January on motion of St. Elizabeth’s Children’s Home who had custody of the witnesses. On January 24, 1983, the hearing was resumed. At that time, letters were introduced into evidence from Dr. W.R. Gaertner stating that, in his opinion, “it is contraindicated therapeutically for this child to attend or participate in any legal proceedings which would require her to leave St. Elizabeth’s Diagnostic and Evaluation Unit at this time. The possibility of psychotic or antisocial behavior exists, at this time, if such a stressful action is initiated.” (Letters appear to be Xerox forms, identical for all three of the defendant’s witnesses.)
In the instant case, the custodial facility impeded the defendant’s right to secure witnesses for her modification hearing. The use of a standard form indicating the psychological unavailability of all of the witnesses sought to be called without opportunity for the defense to traverse those findings or obtain a continuance to secure their attendance appears to be error.
In State v. Gibson, 391 So.2d 421, 427 (La.1980), the Louisiana Supreme Court adopted the “harmless error” analysis as set forth in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) for review of Fourth Amendment violations and other infractions which may be deemed harmless. Chapman and Gibson recognize there are some Federal constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error; others, however, may be deemed harmless and not require the automatic reversal of the conviction.[1] According to Chapman and *375 Gibson, if the error is the kind that may be deemed harmless, the burden is on someone other than the person prejudiced by it to show that it was harmless.
The Chapman harmless error rule requires a reviewing court to consider the evidence in order to determine if there is a reasonable possibility that the error had prejudicial effect; however, it does not permit a court to substitute for the verdict its judgment of what the trier of fact would or should have decided in the absence of error. Gibson, supra. The court in Gibson, quoting Chapman, states the test:
“whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction” and that “the court must be able to declare a belief that [the error] was harmless beyond a reasonable doubt.... ” (At page 428)
Applying these principles to the present case, we find the trial court’s error in not compelling the attendance of these witnesses was harmless. The trial judge allowed a proffer of the witnesses’ testimony. The defense asserts the witnesses would have testified as follows: (1) defendant did not initiate escape plans; (2) defendant did not indiscriminately punch or hit people; and (3) defendant was involved in only two incidents where she hit individuals and, in one of these incidents, she was provoked. The trial judge observed after the proffer that, even if the facts were true, “the case would not turn on that basis.”
The record amply demonstrates that even after full consideration was given to the proffered testimony, there was sufficient evidence presented which would substantiate the finding of the trial court that the defendant had violated the conditions of her probation. At the hearing, St. Elizabeth’s staff reported an episode where defendant had been seen by a staff eyewitness to have intentionally bumped another resident. The staff also reported numerous other incidents of violent or disruptive behavior including the destruction of furniture while engaged in a fight and the theft of another resident’s clothing.
Since defendant Sterling’s probation could have been revoked as a consequence of any one incident alone, we find that there is no reasonable possibility that the failure to compel the attendance of defendant’s witnesses contributed to the revocation of defendant’s probation; and we conclude the refusal of the trial court to compel the appearance of defendant’s subpoenaed witnesses to be harmless beyond a reasonable doubt.
ASSIGNMENT OF ERROR NUMBER 2
By this assignment, the defense presents the following issue for review:
Can the defendant-appellant be penalized for being terminated from an inappropriate placement into which she never should have been placed?
Defense counsel’s argument is based on testimony by Valerie Savoie, the unit supervisor at St. Elizabeth’s Children’s Home, that Phyllis was never appropriate for the program at the home.
The purpose of probation is to promote the defendant’s rehabilitation by allowing him or her to reintegrate into society without confinement. See State v. Carey, 392 So.2d 443 (La.1981) and State v. Clark, 391 So.2d 1174 (La.1980). However, it holds no promise and serves no purpose if the probationer is destined for failure at the outset. State v. Labure, 427 So.2d 855 (La.1983) and State v. Carey, supra.
At the time of the defendant’s placement in St. Elizabeth’s Home, the psychological and educational assessments available to the court and D.H.H.R./D.Y.S., although indicating aggressive tendencies, did not reflect a history of chronic physically disruptive or abusive behavior. With unanimity, the psychiatric, psychological and educational consultants recommended residential placement.
The testimony of Mr. James Rowell, the probation officer assigned to Phyllis Ster *376 ling’s case, reflects that on August 24,1982, a search for a proper placement facility was initiated in response to a plea agreement on the charge of aggravated battery, but no facilities other than St. Elizabeth’s would accept her into their programs. Faced with an additional delinquency adjudication for attempted theft and a petition for child in need of supervision due to habitual truancy, placement became of paramount importance.
La.C.J.P. art. 86 provides, “[t]he court should impose the least restrictive disposition which the court finds is consistent with the needs of the child and the best interest of society.” Considering the options available to the court, either immediate placement at St. Elizabeth’s or confinement at L.T.I. and the mandate of C.J.P. art. 86, the action of the trial court is amply justified.
Accordingly, this assignment of error is likewise dismissed for lack of merit.
ASSIGNMENT OF ERROR NUMBER 3
By the third assigned error, the defense asserts that confinement in the Diagnostic and Evaluation Unit of St. Elizabeth’s was not “placement” under the terms of probation.
The defense requests the court to take judicial notice that the Diagnostic and Evaluation Unit of St. Elizabeth’s was not a treatment unit nor is it intended to be a permanent residential facility.
A thorough examination of the record does not reflect any indication that the placement at St. Elizabeth’s was to be only an interim confinement for evaluation purposes. Nor does it reflect any evidence introduced by the defense to substantiate his argument.
However, even assuming such to be true, a fair reading of the transcript reflects that the intent of the trial court was to remove Phyllis from her current home environment for placement in a group home. Considering the dispositional alternatives available, confinement at St. Elizabeth’s was the least restrictive choice and was made by the trial judge as an alternative to L.T.I.
At the time of placement, the trial judge observed:
THE COURT:
And Pam [Phyllis], I’m telling you, a long, long time ago, I could have said, “go and do the three years for the serious, serious behavior, been shown.” Been thrown out of school. Up in detention, I just made a call about in detention and I said, “how you doing there?” And they said, “up very well and with some of the counselors, you fight and are very hostile and belligerent.” You want to go to the State school today, I’ll say State School today. It’s going to be the State and I really think now, I’m beginning to think it’s a waste of time to send you to St. Elizabeth’s. I really think that you’re going to fight. Most people don’t want to touch...
JUVENILE:
Fight?
THE COURT:
You. That’s right. Most people don’t want to touch you because of your temper.
The record further reflects no objection by defense counsel to the nature of the facility either at the time of the placement or at the modification hearing.
Considering the foregoing, this assignment is also dismissed.
Accordingly, for the above stated reasons, the judgment of the juvenile court revoking the defendant’s probation is hereby affirmed.
AFFIRMED.

. Chapman cited as examples coerced confessions [Payne v. Arkansas, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958) ]; right to counsel [Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) ]; and right to an impartial judge [Turney v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) ]. Other rights seem also inappropriate for harmless error review such as double jeopardy. [Price v. Georgia, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970) ] and grand jury selection [Peters v. *375 Kiff, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972) ].