DIXON, Chief Justice.
Defendant, Donald Taplette, was charged by a bill of information with attempted second degree murder in violation of R.S. 14:27 and 14:30.1. After a jury trial he was convicted and sentenced to serve twenty years imprisonment at hard labor. Taplette has appealed his conviction and sentence directly to this court.[1]
At approximately 5:30 a.m. on September 2, 1979, Taplette was at the Nite Owl Lounge when he encountered a woman he had previously dated and offered to buy her a drink. After consuming his drink, Taplette claims that he began to feel dizzy and became suspicious that the woman had drugged him. He requested that she accompany him outside to discuss the matter. While outside the bar, Taplette and the woman engaged in a heated argument, culminating in Taplette pushing her to the ground.
Jean Beckemeyer, an officer with the New Orleans Police Department, was also present at the bar. While having a drink, he was requested by a barmaid to intervene in the fight between Taplette and the woman outside the bar. Beckemeyer approached the two and the defendant cursed him, told him to mind his own business, and allegedly said that he had “something for you ... I got five slugs for you.” At this point, Beckemeyer took several steps backwards and removed both his badge and his gun, concealing the gun behind his back. Taplette then pushed the woman to the ground and fled. Beckemeyer attempted to apprehend Taplette but could not catch up with him. Beckemeyer then returned to the bar to check on the woman. Several minutes later, Taplette returned, this time brandishing a gun. He burst into the bar and threatened Beckemeyer, who pulled out his gun, forcing the defendant to retreat out of the bar. Beckemeyer claims that as he left the bar, Taplette raised the gun, pointed it directly at him and fired five shots. Beckemeyer dived to the ground just as one of the bullets narrowly missed him, slamming into the side of a van. Again Taplette fled, outrunning Beckemeyer who was giving chase. Beck-emeyer approached a pedestrian and asked him to summon the police. Several minutes later the police arrived to investigate the incident. One of the patrons of the bar was able to give the police the address of Taplette, which was only three or four blocks from the bar.
About an hour after the shooting, the police approached what they believed to be the home of Taplette. They were told by an unidentified bystander that Taplette was observed entering his apartment and was not seen leaving. The police knocked on the door for several minutes but got no response. After conferring with the ranking officer, Lieutenant Phalzgraf, a decision was made to break down the door. When the door was kicked in, it bounced against a chair located behind the doorway, partially knocking a cushion off of the chair and revealing a gun. After searching the house, the police discovered that there was no sign of Taplette; they confiscated *987 the gun, which was later discovered to be the same gun that fired the bullet that was lodged in the van. Despite a search of the area, Taplette was not located; Taplette subsequently surrendered to the police.
Taplette tells a different story. He claims that after going outside of the bar to discuss the matter of the drink that he felt was drugged by the woman, Beckem-eyer intervened and he simply decided to walk to his car and leave. Once in his car, he found that he could not pull out of his parking spot because there were other cars parked too close to him. Beckemeyer then approached him and began cursing him from outside of his window. Finally, Ta-plette left his car with the windows open and the keys in the ignition, opting to walk home. Taplette admits to arming himself with a gun once he reached his apartment. He then returned to retrieve his car. He contends that as he was approaching his car, he saw Beckemeyer across the street. He claims that Beckemeyer pulled his gun from his back pocket and fired two shots in his direction. Taplette then jumped back behind a wall and fired five shots into the air, “for him to know I had a pistol.” Ta-plette claims that Beckemeyer never identified himself as a police officer, and further that he did not shoot at him, but simply fired five warning shots.
Taplette then went home, where he placed the gun under the cushion of a chair. He and his girlfriend then disguised themselves and left the apartment. Later that night they returned to find the door knocked in and the apartment ransacked.
ASSIGNMENT OF ERROR NO. 1
In this assignment of error, Ta-plette contends that the trial court erred in denying his motion to suppress the gun seized by the police from his apartment. At the hearing on the motion to suppress, the only witness was Lieutenant Phalzgraf. He admitted that he did not attempt to secure a search warrant, and further testified that there was nothing to prevent him from doing so. He also testified that the police officers found the address of Ta-plette from an unidentified bystander, who told them Taplette had entered the apartment about twenty minutes earlier and had not been observed leaving the apartment. Phalzgraf testified that he was not the first officer to enter the apartment, but once inside he saw the chair with the cushion only partially in place. He conceded that the cushion was probably moved when the door banged against it when it was kicked in by the officers.
The defense correctly states that war-rantless searches are presumed to be unconstitutional and the state bears the burden of proving one of the recognized exceptions. State v. Talbert, 449 So.2d 446 (La.1984). In this case, the state relies upon the exigent circumstances exception to the warrant requirement. State v. Welch, 449 So.2d 468 (La.1984). The state contends that it had probable cause to believe that Taplette was inside the apartment and exigent circumstances existed due to the shooting that had occurred less than an hour earlier.
The issue of a warrantless arrest of a fugitive in his home was discussed in Payton v. New York, 445 U.S. 578, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). In Payton the court ruled that absent probable cause and exigent circumstances, warrantless arrests in the home are prohibited by the Fourth Amendment of the United States Constitution. While Taplette was not arrested in this warrantless search, we find the rationale of Payton controlling. The police originally obtained the location of Taplette’s home from an unknown patron of the bar. He did not know the defendant’s last name and could only give the police a general description of where Taplette lived. Upon arrival at Taplette’s apartment the police received information from another unknown witness who told the police that Taplette had entered the apartment twenty minutes earlier. The state did not call this witness at the hearing on the motion to suppress and there is no indication as to this person’s reliability or trustworthiness. Once at the apartment, the police made no observations that would lead them to believe that Taplette was inside. They heard no movement within the apartment and saw no other evidence that Taplette was *988 still on the premises. The state therefore failed to make a case for the application of the exigent circumstances exception to the warrant requirement. There were no circumstances to prevent the police from securing the apartment and obtaining a warrant. The warrantless search of Taplette’s apartment was unconstitutional and any evidence seized should have been suppressed by the trial court.
The state, however, has argued that the introduction of the gun was harmless error that did not prejudice the defendant’s case. “... [I]f the prosecution can prove beyond a reasonable doubt that a constitutional error did not contribute to the verdict, the error is harmless and the verdict may stand.” Satterwhite v. Texas, 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988). In this case, Taplette was charged with attempted second degree murder. At trial, the state presented the testimony of Sarah Williams, a barmaid at the Nite Owl Lounge. Her testimony was consistent with that of Beckemeyer as to the actions of Taplette in shooting at the officer. She stated that Taplette did not fire the shots into the air, but instead testified that he pointed the gun straight at Beckemeyer. She also testified that she heard one of the bullets strike the van.
After the state presented its case, the defendant took the stand and testified concerning the events of the night in question. This strategy was undoubtedly influenced by the uncontroverted facts showing that the bullet in the van came from the gun seized from his apartment. However, also crucial in his decision to take the stand was the testimony of both Williams and Beck-emeyer that he had fired the gun directly at the officer. The jury obviously did not find credible his claim that he fired the gun into the air, but instead chose to believe the testimony of Williams and Beckemeyer that he fired the gun with the intent of hitting Beckemeyer. Through the introduction of the gun, the state was able to show that the defendant did not fire into the air as he claimed, but fired directly at Beckemeyer. Had the state not introduced the gun, it would not have been able to tie the bullet found in the van with the defendant. Without the gun, there was a credibility question between the testimony of the defendant and that of Beckemeyer and Williams. The introduction of the gun furnished uncontroverted physical evidence showing that the bullet that struck the van, less than four feet from the ground, was fired from the defendant’s gun. The jury was faced with two conflicting stories of the shooting, and the introduction of the gun gave substantial support to the state’s version. Applying the harmless error standard of State v. Green, 493 So.2d 1178 (La.1986) and State v. Gibson, 391 So.2d 421 (La.1980), we find that the state did not meet its burden of proving beyond a reasonable doubt that the introduction of the gun did not contribute to the defendant’s conviction.
The defendant’s conviction and sentence are reversed and the case is remanded to the trial court for proceedings consistent with this opinion.
LEMMON and MARCUS, JJ„ dissent and assign reasons.

. Defendant was convicted in 1980. Pursuant to Article 5 § 5(E) of the Louisiana Constitution, this court has exclusive appellate jurisdiction.