I,WALTZER, Judge.
Defendant argues that his conviction and sentence were unlawful because the prosecution presented insufficient evidence, relied on the testimony of two witnesses against whom the state agreed to drop charges in exchange for truthful testimony, and displayed two weapons, not admitted into evidence, to the jury venire.
I. STATEMENT OF THE CASE
On 6 April 1995, defendant, Kenley C. Rose, was indicted for the second degree murder of Hung Hoang, in violation of La. R.S. 14:3o.!.[1] At his arraignment on 11 *763 April 1995, the defendant entered a plea of not guilty. A suppression hearing was held on 11 July 1995. The trial court denied the defendant’s motion to suppress the identification. After a jury trial on 31 March 1997, the defendant was found guilty as charged. The defendant filed motions to quash the indictment, for a new trial, and for post verdict judgment of acquittal. The trial court denied defendant’s motions. The defendant waived all legal delays, | ¡.and the trial court sentenced the defendant to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. The trial court granted the defendant’s motion for appeal.
II. STATEMENT OF THE FACTS
On 3 February 1995, Sergeant Jeneris Sanders investigated the murder of Hung Hoang in the thirty-one hundred block of Kent Drive, in eastern New Orleans. The officer received a call about the shooting at approximately 3:30 a.m. When he arrived on the scene, the victim was seated inside a burgundy 1988 Mazda 626 behind the driver’s seat. The victim’s head was resting on the head rest and a door board. All the vehicle’s windows were up and the doors locked. Another officer smashed the rear passenger side window in order to gain entry to render aid to the victim. The victim was shot once in the chest. The weapon used was a thirty-eight caliber gun. The victim was pronounced dead at the scene. The crime lab was called.in to process the scene.
A tip from Crimestoppers provided defendant’s name as a possible suspect. The tip was received twelve hours after the murder. The defendant and two others, Je’Barr and William Locure, were arrested for the murder. The information received indicated the Locure brothers were with the defendant when the defendant shot the victim. Bottles of alcohol were found in the victim’s car. No weapon was found on the victim or in his car.
Several weapons were seized in connection with the investigation after execution of a search warrant for a residence at 2801 Kent Drive. ' The weapons and the victim’s car were processed for fingerprints. However, the crime lab was unable to obtain any fingerprints. Bullets were recovered from the victim’s body during the autopsy. Je’Barr and William Locure gave statements to the officers j3after their arrests.
William Locure testified that at approximately 3:00 a.m. on 3 February 1995, he was hanging out with defendant and several others in the thirty-one hundred block of Kent Drive. The victim drove into the area and sought to sell alcohol for crack cocaine. The defendant spoke with the victim and told the victim to leave the area. At one point, defendant and three other men were standing around the victim’s car. The defendant told the victim to leave and hit the victim in the head with a gun. The victim rolled up his window and everyone started walking away from the window. As William Locure was walking towards the apartments, he heard a gunshot. He did not look back. He ran off. Je’Barr was walking towards him as he was running away. He and Je’Barr left the area and went home.
William Locure 'stated that he saw the defendant on a daily basis. The defendant hung out in the same area as Locure. This witness was arrested on 7 February 1995. He gave a statement to the police officers after his arrest. Locure acknowledged prior convictions for theft and possession of marijuana. Furthermore, he stated that the victim drove a maroon Toyota, came into the area earlier that evening to buy cocaine, and was trying to sell alcohol for cocaine. Locure also revealed that the defendant had a chrome-colored gun. The witness admitted that he signed a memorandum of understanding with the state, in which he agreed to testify against *764 the defendant in exchange for dismissal of all charges against him regarding this murder. On cross-examination, the witness revealed that he did not see the defendant pull the trigger.
Dr. Paul McGarry, a forensic pathologist with the Orleans Parish Coroner’s Office, performed an autopsy on the victim. The victim had a fresh gunshot |4wound to the left side of his chest. The bullet went through the left lung, the heart and stopped below the right rib cage. The gunshot wound caused massive bleeding and was the cause of the victim’s death. Glass fragments were found around the gunshot wound. Dr. McGarry also found an old bullet wound in the victim’s back. The wound was approximately two years old. Bullets from both wounds were recovered. Both bullets were thirty-eight caliber. However, the bullet from the old wound was pure lead. The victim also had a cut wound across his sidebum near his cheek. This wound would be consistent with being hit with the butt of a gun or a heavy object.
The parties stipulated that Ruby Ory, a toxicologist, would testify that the victim’s blood samples were negative for alcohol, barbiturates or benzdiazepenes. However, the victim’s bile and vitreous fluid samples were positive for cocaine.
Officer John Ronquillo of the New Orleans Police Department executed a search warrant at 2801 Kent Drive on 7 February 1995. He was looking for a gun, the weapon used in the shooting. Eight officers were involved in the search of the premises. In the front bedroom, they found a thirty-eight caliber Smith & Wesson, a thirty-eight caliber R & G revolver, and a box of .357 bullets. A nine millimeter weapon was found in another part of the house. No fingerprints were taken off of the weapons. The officers could not find any ownership papers for the weapons. 2801 Kent Drive was not the defendant’s residence.
Officer John Treadway, a senior firearms examiner with the Crime Lab, examined the three weapons and two thirty-eight caliber bullets seized at the Kent Drive address and the two bullets recovered from the victim’s body. The bullets taken from the victim’s body were fired from a revolver with a five right rifling, such as a Smith & Wesson, a Ruger or a late model Taurus revolver. The bullets Lcould have been fired by a .357 magnum. There were not enough individual striations on the bullets for Officer Treadway to determine whether the bullets were fired from the Smith and Wesson retrieved from the Kent Drive address. The R & G thirty-eight caliber revolver did not function and had an eight right rifling.
Je’Barr Locure testified he was walking toward his brother, William Locure, when Je’Barr noticed the victim in his vehicle. The victim sought to sell alcohol for cocaine. The defendant and three other men walked up to the victim’s vehicle. The defendant stayed by the car after the other three men began walking away. The defendant and the victim got into an argument. The defendant hit the victim in the head with a gun and told the victim to leave the area. The victim started to roll up his window. At that point, the witness turned and began to walk home. The witness heard one gunshot and turned around. He saw the defendant next to the victim’s car. The defendant was the only person by the vehicle. The witness did not see the victim with a weapon. The witness and his brother ran home after hearing the gunshot. The witness acknowledged two prior convictions for first degree robbery.
III. DISCUSSION

A Errors Patent

A review of the record for errors patent reveals none.

B. Assignment of Error No.l

In his first assignment of error, the defendant contends the state failed to produce sufficient evidence to support defendants conviction for second degree murder. The defendant suggests that the *765 evidence was insufficient to prove he was the perpetrator of the murder.
1 fiWhen assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La.R.S. 15:438. La.R.S. 15:438 is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, supra.
La.R.S. 14:30.1 defines second degree murder as “the killing of a human being ... [w]hen the offender has a specific intent to kill or to inflict great bodily harm.” In the present case, the state has produced sufficient evidence through the Locure brothers for the jury to conclude that the defendant was the person who killed the victim. While neither witness saw the defendant shoot the weapon, their testimony placed defendant next to the victim at the time of the shooting. In addition, both witnesses saw that the defendant had a weapon in his hand and used the weapon to strike the victim on the head. The Locure brothers stated that the 17defendant stayed by the victim after the other men walked away. The defendant and the victim engaged in another argument. Within seconds thereafter, the victim was shot and killed. The jury had sufficient evidence before it to determine that the defendant was the person who shot and killed the victim. Thus, the state produced sufficient evidence to prove beyond a reasonable doubt that the defendant was guilty of second degree murder.
This assignment of error is without merit.

C. Assignments of Error No.2 and No. 3

The defendant further complains that the trial court erroneously denied his motion for a mistrial, motion to quash, motion for new trial and motion for post verdict judgment of acquittal. Defendant argued he was entitled to relief as he was denied a fair trial when the state placed two weapons on the table in view of the jury venire. The defendant objected to the presence of the weapons. The trial court told the prosecutor to put the guns away. The prosecutor then covered the weapons. The weapons were not visible during trial. The following colloquy occurred between counsel and the trial court during voir dire.
THE COURT:
Ms. Burkhalter, didn’t I tell you to put the guns away?
MS. BURKHALTER:
I apologize. I forgot. I will put them up right away.
THE COURT:
Do you have a motion?
MS. HUGHES:
I make a motion for mistrial.
THE COURT:
I will deny that and I note your objection for the record. Let the record reflect what appears to be an automatic assault pistol and a short barrel revolver has been on the prosecutor’s table during the jury selection, notwithstanding the fact defense previously objected to *766 that |sand the State has neglected to remove those items from the table.
The weapons to which the trial court was referring were seized from 2801 Kent Drive. However, the weapons were never linked to the murder. Sgt. Ronquillo testified he learned, after executing the search warrant for 2801 Kent Drive, that the defendant did not reside at 2801 Kent Drive. Officer Treadway, a senior firearms examiner with the Crime Lab, examined the weapons seized from the residence on Kent Drive and the bullets retrieved from the victim’s body. The officer testified at trial that he could not make a determination whether the Smith & Wesson found in the residence was used in the murder. Since the weapons could not be linked to the murder, the state did not introduce the weapons into evidence.
While the weapons were not introduced into evidence, testimony relating to the weapons was provided by the police officers. Thus, the jury was made aware of the existence of the weapons. However, the jury was also informed that the weapons were not linked to the murder. As the weapons were not linked to the murder, the testimony from the police officers concerning the weapons was irrelevant and inadmissible.
Generally, inadmissible evidence has been found not to prejudice a defendant by its improper admission. In order to determine if improperly admitted evidence has prejudiced a defendant, a reviewing court must apply the harmless error rule announced in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); State v. Green, 493 So.2d 1178 (La.1986); State v. Gibson, 391 So.2d 421 (La.1980). The harmless error rule provides that a court must determine “whether there is a reasonable possibility [that the evidence complained |9of[ might have contributed to the conviction” and that “the court must be able to declare a belief that [the error] was harmless beyond a reasonable doubt.” Gibson, at 426, quoting Chapman, 386 U.S. at 24, 87 S.Ct. at 828, 17 L.Ed.2d at 710-711.
In the present case, the error of which the defendant complains is harmless. There was sufficient evidence through the testimony of the Locure brothers to connect the defendant with the murder of Hung Hoang. Both of the witnesses testified that the defendant was the only person standing next to the victim’s vehicle when they heard the gunshot. Only seconds before, they saw the defendant strike the victim with a gun. In addition, the jury was informed that the defendant did not live at the residence where the guns were found. The weapons, which were allegedly within the view of the jury venire prior to trial, did not contribute to the jury’s verdict. Furthermore, the record does not indicate that any members of the jury venire actually noticed the weapons. The trial court did not err when it denied the defendant’s motions.
These assignments are without merit.

D. Pro Se Assignment of Error No.l

In his pro se brief, the defendant contends that the trial court erred when it allowed the Locure brothers to testify against the defendant as their testimony was obtained through an agreement with the state to nolle prosequi the charges against them. The Locure brothers executed a “Memorandum of Understanding” with the state on 12 September 1996. This agreement provided that the charges against the Locure brothers would not be prosecuted if they testified truthfully at the defendant’s trial. The jury was informed of the agreement during the trial, and the Locure brothers were questioned extensively about the agreement during cross-examination. Thus, the jury was well aware of the agreement and was able to Imconsider any bias or interest the Lo-cure brothers had in testifying at trial. Accordingly, the trial court did not err when it allowed the Locure brothers to testify at trial.
*767 The defendant also suggests that the trial court should not have allowed the witnesses to testify because they received something of value for their testimony. The defendant argues that the “something of value” was the dropping of the charges by the state. The defendant refers to the public bribery statute in his brief[2] and contends that the “Memorandum of Understanding” executed by the Locure brothers and the state is a violation of the statute. No appellate court in this state has determined that a “memorandum of understanding” or plea agreement is something of “apparent present or prospective value” and/or violates the public bribery statute.
This assignment is without merit.
CONCLUSION
Accordingly, defendant’s conviction and sentence for second degree murder are affirmed.
AFFIRMED.

. Je’Barr Locure and William Locure were indicted with defendant Rose for the murder of Hung Hoang. On 26 February 1995, the trial court granted’ Rose's motion for sever-anee. The Locure brothers entered into a memorandum of understanding with the state on 12 September 1996 in which the Locure brothers agreed to testify truthfully against *763 Rose. On the same date, the state agreed to forego prosecution of the charges against the Locure brothers.

. La. R.S. 14:118 defines public bribery, in pertinent part, as "the giving or offering to give, directly or indirectly, anything of apparent present or prospective value to any of the following persons, with the intent to influence his conduct in relation to his position, employment or duty: ... (d) Witness, or person about to be called as a witness, upon a trial or other proceeding before any court, board or officer authorized to hear evidence or to take testimony.”