DOUCET, Judge.
This case is on appeal as a result of a 10-2 jury verdict returned against defendant, Donald Ray Barrett, finding him guilty of manslaughter, a violation of La.R. S. 14:31. The verdict was a responsive verdict to a second degree murder charge. The district court sentenced defendant to fifteen years at hard labor, five years of which is to be served without benefit of parole, probation or suspension of sentence. Defendant appeals this conviction and sentence based on six assignments of error. Assignment of error number three has not been briefed on appeal and is therefore considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982).
FACTS
On April 12, 1987, the victim, Greg Alexander, died as a result of a gunshot wound to his neck received while he was behind the Pel-State Fina Station on Willow Glen and Third Streets in Alexandria, Louisiana. Defendant, Donald Ray Barrett, and his brother, Lionel Barrett, were the only other persons behind the station where the shooting occurred. Willerton Tidies, the person with whom the victim had ridden to the station, and Dianne Baines, the station attendant, were in the area in front of the station and heard the shot. Following the shooting, defendant and his brother left the scene.
*656 Nearly three and one-half hours after the shooting, defendant voluntarily reported to the Alexandria Police Department and stated that he wanted to “try to clear up what happened behind the Fina Station.” At this time, defendant was placed under arrest for second degree murder. Subsequently, defendant was indicted as charged, tried and found guilty of the responsive charge of manslaughter.
ASSIGNMENT OF ERROR NO. 1
In defendant’s first assignment of error, he urges that the trial court erred in finding him guilty of manslaughter since there was insufficient evidence to constitute a basis for conviction. We disagree.
In support of this contention, defendant urges that when a case is built solely on circumstantial evidence, it is incumbent upon the state to exclude every reasonable hypothesis of innocence. Defendant adds that in this case, the state failed to do so. Specifically, defendant urges that the state did not exclude the reasonable hypothesis that the victim was accidentally shot and killed in a struggle when the (decedent) produced a weapon and threatened defendant’s brother.
Generally, the due process standard for reviewing the sufficiency of evidence in order to sustain a conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Honeycutt, 438 So.2d 1303 (La.App. 3rd Cir.1983), writ denied 443 So.2d 585. Ultimately all evidence, both direct and circumstantial, must satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden. State v. Porretto, 468 So.2d 1142 (La.1985); State v. Sharlow, 493 So.2d 213 (La.App. 5th Cir.1986), writ denied 496 So.2d 329 (La.1986).
In order to be convicted of manslaughter, the state must prove:
“(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed; or
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Articles 30 or 30.1, or of any intentional misdemeanor directly affecting the person; or
(b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Articles 30 or 30.1.” La.R.S. 14:31.
Mr. Willerton Tidies testified that the defendant’s brother, Lionel Barrett, had physically assaulted the victim earlier on the morning of the shooting after accusing him of stealing some of his belongings. Further, Tidies testified that following this incident, he and the victim left and went several places on personal errands. Later during the day, the two traveled in front of the Fina Station when they observed defendant and his brother standing at a garage across from the Fina Station. The victim requested that Tidies pull into the parking lot at the Fina Station in order to allow him to explain to the Barrett brothers that he knew nothing about the items taken from Lionel Barrett. When Tidies pulled into the parking area, the Barretts pulled in behind him. Tidies testified that before the victim could get out of the truck, defendant’s brother grabbed the victim, dragged him to the side of the station and started physically assaulting him. Tidies added that at this point, defendant exited his ve- *657 hide with a gun in his hand and walked over to the area where his brother was beating the victim. Shortly thereafter, Tidies testified that he heard a gunshot. Lionel Barrett and defendant walked around the corner of the building and, according to Tidies, defendant still had the pistol in his hand. Tidies testified that the gun that defendant was carrying was a .357 Magnum, the same type of weapon that defendant had purchased four days earlier. When Tidies did not see the victim emerge from the rear of the station, he testified that he became frightened, got into his truck and drove to a deputy sheriffs house a few blocks away. Defendant and his brother followed him to the deputy’s house and unsuccessfully attempted to talk to him.
The state also presented crucial evidence in the form of testimony of the coroner, Dr. George M. McCormick. Through his testimony, Dr. McCormick established the following facts relating to what the physical evidence revealed about how the shooting may have occurred. They are as follows:
(1) That the victim died as a result of a gunshot wound to his neck fired from a large caliber handgun.
(2) That the gun was probably less than an inch from the body at the time it was discharged evidenced by a black circle of soot around the wound.
(3) That the victim was a 5'6", 150-160 pound man.
(4) That the angle of the wound to the victim was consistent with a six foot tall man holding the gun up and shooting into the side of the victim’s neck from a distance of one or two inches.
(5) That there was no evidence of gun powder soot or residue found on the victim’s hands to indicate that the victim had had his hand on the pistol when it was fired.
(6) That the blood patterns evidenced in the photographs of the scene indicate that the victim was standing with his back to the wall against the air conditioning unit when he was shot.
(7) That the entrance wound caused the blood to skid on the air conditioning unit to victim’s right and the exit wound was the source of the blood on the wall.
(8)That after being shot the victim moved along the wall towards the corner of the building, leaving various blood smears on the wall of the building.
Additionally, through the testimony of the other witnesses, the State established that the Barrett brothers left the scene following the shooting. The State also established that the lead projectile recovered at the scene of the shooting was taken from the back wall just to the left of the air conditioner which supports Dr. McCormick’s statement of how the shooting occurred.
The defendant, on the other hand, attempted to establish that the shooting was accidental. In order to do this, defendant sought to discredit or impeach the testimony of the State’s witness, Willerton Tidies, by emphasizing alleged discrepancies in his statements regarding the description of the weapon he allegedly observed in defendant’s hand prior to the shooting. Also, the defense tried to establish that the victim was the aggressor in the confrontation, had the gun in his possession and threatened defendant’s brother with it. Finally, the defense sought to prove defendant attempted to prevent the victim from shooting his fleeing brother and the gun was discharged in the struggle.
In order to do this, defendant adduced testimony from seven witnesses, including himself. Among the other witnesses called were Detectives Clyde Carmouche and Melvin Queen, Jr., Mrs. Ethel Barrett and Mrs. Carolyn Barrett, the mother and wife of defendant respectively, Lionel Newton, the nephew of defendant, and John Franklin, an individual who allegedly saw the victim with a weapon.
Taking the stand, Detectives Carmouche and Queen related portions of a statement taken from Willerton Tidies wherein Mr. Tidies described the weapon in question as being dark black when, in fact, the weapon was dark blue. Carmouche and Queen also testified to the fact that the defendant voluntarily came to the police department and was arrested at about 4:45 p.m.
*658 Next, Mrs. Ethel Barrett, defendant’s mother, testified that she had experienced break-ins in her home during early 1987, and that1 the defendant, in response to this problem, purchased a gun for her protection. She further stated that the defendant gave her the gun, a dark blue pistol with a brown handle, which she kept in a closet. Finally, she testified that her son lived in Boyce, Louisiana, and often visited her at her home. In fact, she stated that prior to the April 12, 1987 shooting, he had last visited with her on April 10, 1987.
Defendant’s wife testified that her husband arrived home alone about 1:00 or 2:00 o’clock on the afternoon of the shooting and told her that he had been in an accident. Also, she added that her husband advised her that he was going to the police station, stayed home about an hour, and left.
John Franklin testified that he met the victim about two or three months prior to the trial, one Saturday at a bar on Third Street. Franklin stated at this time, the victim had a gun in his possession and tried to sell it to him. Franklin explained that the victim was carrying the pistol under his shirt. However, on cross-examination, the State challenged Franklin’s statements in light of the fact that the victim had been dead for more than one year and one month prior to trial. Franklin could not explain how he saw the victim two to three months prior to trial.
Lionel Newton, defendant’s nephew, testified that he stole the gun out of defendant’s mother’s closet and traded it to the victim for some cocaine two days before the shooting.
Finally, defendant took the stand and testified in his defense. The defendant related an account which varied greatly from the State’s witnesses’ accounts. More specifically he stated that:
1. The victim, and not himself, had the weapon and invited them behind the Fina Station.
2. The victim, pulled out the pistol and pointed it at him and his brother and threatened them with it.
3. His brother ran and the victim pointed the pistol toward his brother. Defendant then lunged and grabbed at the victim to prevent him from shooting his brother.
4. When he grabbed the pistol and tried to push it up and away from himself by turning the gun over the victim’s left shoulder, the gun went off, hitting the victim in the neck.
5. He followed the witness (Willerton Tidies) to try to talk to him, went to his mother’s house to look for the pistol he had bought her and then drove to his own home in Boyce after he could not find the pistol.
6. He was 6 feet, 250-255 pounds, and the victim was 5’4"-5'5" tall.
7. Immediately following the shooting, he threw the weapon over his left shoulder.
There was a substantial body of evidence offered by the State to refute and to completely disprove the theory espoused by defendant. Specifically, that defendant and his brother, Lionel Barrett, seized Greg Alexander, dragged him behind the building, and left him for dead. We find that the evidence submitted by the State excluded every reasonable hypothesis of innocence, specifically that Alexander was shot and killed in a struggle when he (Alexander) produced a weapon and threatened his brother. Thus, we find that the State proved the essential elements of manslaughter beyond a reasonable doubt.
Defendant in his rebuttal and supplemental brief urges that the State’s case hinged solely on the testimony of Willerton Tidies and that Mr. Tidies’ testimony was very questionable. Moreover, defendant alleges that because Mr. Tidies did not go into the Pel-State Fina store and report the abuse of the' victim or attempt to pick up the phone in front of the store and dial 911, his testimony is inconsistent and lacks credibility.
Citing State v. Mussall, 523 So.2d 1305 (La.1988), and State v. Bay, 529 So.2d 845 (La.1988), defendant contends that defendant’s conviction should be reversed because the Louisiana Supreme Court has *659 held that testimony alone which would support each fact necessary to constitute a crime, in and of itself, is not sufficient -when the testimony of a State’s witness lacks credibility. Also, defendant notes that the Supreme Court in Bay, supra, reversed a conviction when it declined to accept a jury’s finding of fact based upon a credibility call and it held that the trial conviction was based on “too insubstantial a witness’s uncorroborated testimony.”
However, defendant’s contention is not supported by a clear reading of the record. Nothing therein reveals that Mr. Tidies’ testimony lacks credibility. Moreover, his testimony is corroborated somewhat by the evidence that defendant did purchase a gun similar to the one the witness described only a few days before the shooting. Further, the only difference defendant urges in the witness’s statements deals with whether the gun was black or dark blue. This variation is well explained in the record. Finally, unlike the situations in the two cited cases, Mr. Tidies’ testimony was not “insubstantial,” but quite substantial to the case. Therefore, it appears that the court’s holding in the cited case would not be applicable in the instant case.
When there is conflicting testimony of witnesses at a trial, a determination of credibility is a function of the trier of fact. Such determination is entitled to great weight and should not be disturbed unless there is manifest error. State v. Robertson, 421 So.2d 843 (La.1982). The record reveals no such error in the instant case.
Thus, this assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 2
In defendant’s second assignment of error, he urges that the trial judge erred in instructing defense counsel not to call a favorable witness and erred in limiting defendant’s right of confrontation and cross-examination.
Defendant is referring to the fact that the State was allowed at the close of its evidence to call Lionel Barrett up to the witness stand only for the purpose of allowing the jury to view his size. The State, by doing so, attempted to show that because of the large size of the Barrett brothers, they did not have to exercise unreasonable force in restraining or attacking the alleged victim. The State called Lionel Barrett only for this limited purpose. Defense counsel was barred from asking Lionel Barrett any questions inasmuch as Lionel Barrett’s attorney instructed the judge that she would advise him to invoke the Fifth Amendment and would instruct him to refuse to answer any questions. For this reason, defense counsel objected to the trial judge allowing the State to produce Lionel Barrett inasmuch as defendant was entitled to a total exclusion of this type of evidence in light of his inability to cross-examine and confront this evidence being used by the State against him.
Defendant attempts to support this contention by quoting part of the language of a statement by the Louisiana Supreme Court in State v. Berry, 324 So.2d 822 (La.1975), cert. denied 425 U.S. 954, 96 S.Ct. 1731, 48 L.Ed.2d 198 (1976). Defendant, in his appellate brief quotes: “It is improper conduct for either the prosecution or the defense knowingly to call a witness who will claim a privilege.... ” Defendant left out a crucial part of this statement. The court in Berry, supra, at 830, goes on to state, “... for the purpose of impressing upon the jury the fact of the claim of privilege.” Hence, a complete reading of the statement reveals that the court did not seek to prevent all calling of such a witness, but only when the witness is being called for the emphasized purpose.
In the instant case, the record clearly reflects that the State called the witness for the limited purpose of introducing his person. Therefore, since the purpose was not for having the witness invoke a privilege before the jury, the prohibitions announced by the court in the above cited cases do not apply in the instant case.
Thus, we find that this assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 3
This assignment has not been briefed on appeal and is therefore considered aban *660 doned. State v. Dewey, 408 So.2d 1255 (La.1982).
ASSIGNMENT OF ERROR NOS. 4 & 5
In defendant’s fourth and fifth assignments of error, he urges that the trial judge erred in imposing an excessive sentence upon defendant.
In support of this contention, defendant points out that he is a family man with three children, has been employed for a long period of time with the same employer, has been a good citizen, and has no previous criminal record.
Although a sentence imposed may be within the statutory limit, it may still violate the defendant’s constitutional right against excessive punishment and the ex-cessiveness of the sentence is reviewable by the appellate courts. La. Const. Art. I § 20; State v. Sepulvado, 367 So.2d 762 (La.1979). The statutory guidelines of Article 894.1 provide criteria by which the reviewing court can measure whether or not a sentence is excessive. Sepulvado, supra; State v. Cox, 369 So.2d 118 (La.1979). In order to constitute an excessive sentence the penalty imposed must be so grossly disproportionate to the crime committed in light of the harm caused to society as to shock the court’s sense of justice. State v. Cann, 471 So.2d 701 (La.1985); State v. Bonanno, 384 So.2d 355 (La.1980); State v. Viator, 495 So.2d 1341 (La.App. 3rd Cir.1986). However, the trial judge is given wide discretion in imposing sentences within the statutory limits and they should not be set aside absent manifest abuse of discretion. State v. Davis, 449 So.2d 452 (La.1984); State v. Hupp, 514 So.2d 271 (La.App. 5th Cir.1987).
In order to comply with the requirements of Article 894.1, the sentencing court need not articulate every aggravating and mitigating circumstance in the article. State v. Davis, 448 So.2d 645 (La.1984); State v. Smith, 433 So.2d 688 (La.1983); State v. Vital, 491 So.2d 180 (La.App. 3rd Cir.1986). Rather, mandate of the statute is satisfied when the record affirmatively shows that the court considered the factors and stated for the record the considerations taken into account for imposition of sentence. State v. Duncan, 420 So.2d 1105 (La.1982); State v. Schaeffer, 414 So.2d 730 (La.1982); State v. Dugas, 527 So.2d 610 (La.App. 3rd Cir.), writ denied, 533 So.2d 15 (La.1988). The important factors that must be considered are the defendant’s personal history, prior criminal record, the seriousness of the particular offense and likelihood of rehabilitation or recidivism. State v. Soco, 441 So.2d 719 (La.1983); State v. Ezernack, 408 So.2d 907 (La.1981); State v. Dugas, supra.
In the instant case, in imposing the sentence the trial court articulated specific reasons for the sentence imposed. In the sentencing colloquy, the court states these reasons to be:
(1) That defendant stood convicted of killing a human being;
(2) That a firearm was used in the commission of the offense;
(3) That any lesser sentence would deprecate the severity or seriousness of the crime;
(4) That defendant was a first offender with no prior record and a family.
Thus, the record supports the fact that the court did sufficiently particularize defendant’s sentence. Additionally, said sentence is not excessive in view of the fact that a serious crime was committed and defendant received only fifteen years when he could have received up to twenty-one years.
We reject defendant’s contention that the trial court erred in imposing a mandatory minimum sentence of five years without the benefit of probation, parole or suspension of sentence. Article 893.1 of the Code of Criminal Procedure, as was in existence at the time this defendant was sentenced on June 27, 1988, provided:
When the court makes a finding that a firearm was used in the commission of a felony and when suspension of sentence is not otherwise prohibited, the court shall impose a sentence which is not less than:
(1) The maximum sentence provided by law, in the same manner as provided *661 in the offense, if the maximum sentence is less than five years, or
(2)Five years, in the same manner as provided in the offense, if the maximum sentence is five years or more.
Imposition or execution of sentence shall not be suspended and the offender shall not be eligible for probation or parole. Added by Acts 1981, No. 1S9, § 1.
The trial court in the instant case was charged by the language of the above statute to impose the mandatory minimum sentence of five years without the benefit of probation, parole or suspension of sentence since a firearm was used in the commission of the crime. Thus, we reject this assignment of error.
ASSIGNMENT OF ERROR NO. 6
In defendant’s last assignment of error, he urges that the trial court erred in failing to grant his motion for new trial. Defendant relies on the arguments presented in the other assignments of error to support this contention.
La.C.Cr.P. art. 851 provides:
“The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
(2) The court’s ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or
(5)The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right. Amended by Acts 1974, No. 207, § 1.”
For the reasons previously noted under the above assignments of error, we find that the trial court did not err in denying defendant’s motion for a new trial in that none of the criteria mentioned above for granting a new trial are present. Thus, this assignment of error lacks merit.
Accordingly, for the reasons assigned, the conviction and sentence imposed upon defendant by the trial court is affirmed.
AFFIRMED.