STOKER, Judge.
Defendant, Numa Jeansonne, Jr., was convicted of incest, a violation of LSA-R.S. 14:78. Defendant was sentenced to five years at hard labor. Defendant appeals his conviction and sentence. We reverse and remand for a new trial.
FACTS
On December 17, 1988, defendant’s three daughters from his prior marriage were visiting him at his camp on Old River, along with defendant’s parents, wife and children. During the evening, Wendy Jeansonne, defendant’s 12-year-old daughter from the prior marriage, asked to be brought back to defendant’s home in Marksville in order to recover the contact lens saline solution she had left there. After some discussion, defendant drove Wendy to his home at about 8:00 p.m. While at the house, defendant allegedly had sexual intercourse with Wendy.
Testimony from the defense witnesses conflicted greatly with the victim’s account of the event leading up to and following the alleged accident. Wendy did not discuss the incident until she told a friend one month later. Thé friend convinced Wendy to tell her mother, who subsequently initiated the investigation which led to the instant charge.
OPINION
Defendant contends on appeal that the trial court erred in allowing a medical evaluation report prepared by Dr. Moore for the Office of Human Development, Division of Children, Youth and Family Services, to be introduced into evidence. The State offered in evidence Dr. Moore’s report under LSA-R.S. 13:3714 which permits the admission of certain certified hospital records, and the trial judge admitted the report as such. The State did not call Dr. Moore to testify. The four-page report was stapled to the back of six pages of hospital records. The hospital records were accompanied by a certification by the Huey P. Long Regional Medical Center medical records custodian which specifically stated that the six pages of attached *804 hospital records were certified copies. Clearly, the four-page report was not a certified medical report from the Huey P. Long hospital. The report was introduced with the hospital records over defendant’s objection. Defendant alleges that the erroneous introduction of the report was not harmless error.
With what appears to us to be inconsistency, the State contends that although it does not know how the report became stapled to the hospital records after they were introduced into evidence, it is clear that the report formed part of the hospital records and was properly certified as such by the custodian of the hospital record.[1] Dr. Moore signed the report stating that it was a true copy of the report he submitted to the Child Protection Agency. There is no indication in any form that Dr. Moore’s report was intended to be a part of the hospital record.
In the alternative, the State argues that its introduction is harmless error since its contents are merely cumulative of the victim’s testimony.
The medical report by Dr. Moore is not a hospital record. It was made as part of an investigation performed by the Office of Human Development. As the State admits, there is no indication as to how the report became stapled to the hospital report. Therefore, LSA-R.S. 13:3714 is not relevant. LSA-R.S. 46:56(F) permits the release of Department of Health and Human Resources (DHHR) or Department of Social Services (DSS) records pertaining to investigations of abuse of children to district attorneys. However, such records do not fall within the public records and reports exception to the hearsay rule and are specifically excluded from the business records exception. See LSA-C.E. art. 803(8) and Official Comments and art. 803(6) and Official Comments. Dr. Moore’s findings should have been introduced through his testimony rather than his report. Defendant was denied his right to confront Dr. Moore. Therefore, we must now determine whether admission of the report constituted harmless error.
The standard used to determine whether the erroneous introduction of physical evidence constitutes harmless error was set forth by the Supreme Court in State v. Green, 493 So.2d 1178 at 1185 (La.1986):
“In order to determine if improperly admitted evidence has prejudiced a defendant, this court has adopted the test for harmless error announced in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In State v. Gibson, 391 So.2d 421 (La.1980), this court determined the harmless error rule of Chapman used by the federal courts was ‘the standard most compatible with this Court’s view of its own criminal appellate jurisdiction.’ Gibson, supra.
“In Gibson the court was concerned with prejudice suffered by the defendant due to the introduction of evidence which had been obtained through an unreasonable search and seizure. The introduction of the evidence was found to be harmless by application of the Chapman test, i.e.,
“1.. Whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction’ and that ‘the court must be able to declare a belief that {the error) was harmless beyond a reasonable doubt," Gibson, supra. (Emphasis added.)
“While the Chapman test was first used by this court in examination of constitutional errors, Justice Dennis, writing for a majority of the court in Gibson, stated ‘we think the Chapman rule provides a helpful ... guide in cases involving errors of state procedure or state law.’ Gibson, supra.
“Generally a reviewing court should only reverse a conviction when substantial rights of the accused have been violated by the introduction of inadmissible evidence. The purpose of the Chapman *805 test is to allow the appellate courts to focus not only on the other evidence of guilt, but more importantly ‘on the incriminating quality of the tainted evidence’ which was wrongfully admitted. Gibson, supra. Obviously, this is a more stringent test than the ‘substantial independent evidence’ standard of review previously used by this Court. State v. Lane, 292 So.2d 711 (La.1974).”
See also, State v. Walters, 523 So.2d 811 (La.1988).
The trial court judge specified three reasons in his oral reasons for finding defendant guilty of incest: (1) the credibility of the victim’s testimony, (2) testimony by Dr. Lonowski as to the victim’s psychological injury, and (3) the physical evidence that the victim had engaged in intercourse. The only evidence that the victim had previously engaged in intercourse was the finding of Dr. Moore, resulting from his physical examination of the victim one month after the alleged incident, and the victim’s own testimony. Thus, the objective physical finding in Dr. Moore’s report was not merely cumulative.[2] Dr. Moore’s report seems to have contributed to defendant’s conviction. We cannot agree that its admission was harmless beyond a reasonable doubt. Although it might be argued that there is other sufficient evidence to support defendant’s conviction, the Louisiana Supreme Court has clearly held that a violation of the accused’s constitutional right of confrontation is reversible error under LSA-C. Cr.P. art. 921. State v. Michelli, 301 So.2d 577 (La.1974). Therefore, we must reverse defendant’s conviction and order a new trial. Defendant’s other assignments of error are moot and will not be discussed.
CONCLUSION
Accordingly, for the reasons given, the defendant's conviction is reversed, his sentence is vacated and the case is remanded for a new trial in accordance with the law.
REVERSED; VACATED; REMANDED FOR NEW TRIAL.
APPENDIX I
The following is excerpted from the State’s brief submitted in this case:
Defendant in brief does correctly point out that the certification of hospital records executed by the medical records administrator reflects that six (6) pages are attached and that Exhibit S-l contains a total of ten (10) pages. While the State cannot explain how these documents got stapled together as one after submission into evidence the record is nevertheless clear that the four (4) page physical examination form captioned “Office of Human Development Division of Children, Youth, and Family Services” was an attachment to the certified copy of the hospital records from the Huey P. Long Regional Medical Center consisting of six (6) pages (see transcript page 92). It is evident upon review of these records that the emergency department’s referral to “white sheet for details” (8th page of Exhibit S-l) is a reference to the physical examination form attached, both of which were prepared by Dr. Moore at 8:15 A.M. on January 17, 1989 as reflected thereon.
While admittedly the inexplicable inclusion of the physical examination form prepared by Dr. Moore for the Office of Human Development into the middle of the certified hospital records containing six (6) pages causes some confusion, the identification of these two documents are clearly set forth in the transcript at page 92 when S-l was introduced in globo.
It is also apparent that the four page physical examination form prepared and certified by Dr. Moore is not in strict accord with the above cited statute since Dr. Moore makes no indication of being an administrator or medical records librarian. However, a comparison of the information *806 on the physical examination form and that provided in the emergency department report reveals the identical information excepting the detail provided in the history given by the victim (who was of course was the main prosecution witness at trial).
It is abundantly clear that the certification of hospital records by the medical records administrator of the Huey P. Long Regional Medical Center reflected on page 1 of Exhibit S-l consisting of six (6) pages is indeed in full compliance with the provisions of La.R.S. 13:3714. Therefore, should this court find that the physical examination form prepared by the same physician who is reflected in the hospital records was improperly introduced into evidence, it is nevertheless evident that the information contained therein was merely cumulative of the properly introduced medical records and testimony of the victim, thus constituting was harmless error. See State vs. Cotton 511 So2d 1207 (2d Cir.1987); State vs. Domingue 507 So2d 296 (3rd Cir.1987), writ denied 512 So2d 455.

. In Appendix I attached to this opinion we set forth certain language from the State’s brief submitted in this case setting forth the State's argument as to why Dr. Moore’s evaluation report should be considered part of the hospital record and thus admissible.

. The State also argues that Dr. Moore’s report is cumulative of Dr. Jones’s report. Dr. Jones also examined the victim and reported the results to the "Child Protection Agency” (a colloquial term for the same agency). The State errs in its contention for three reasons: (1) Dr. Jones's report was not introduced into evidence; (2) the report does not contain a statement that the victim had previously engaged in sexual *806 intercourse; and (3) the report would have the same evidentiary problems as Dr. Moore’s report.