580 So.2d 1010 (1991)
STATE of Louisiana
v.
Numa JEANSONNE, Jr.
No. Cr 89-972.
Court of Appeal of Louisiana, Third Circuit.
May 22, 1991.
*1011 Charles G. Gravel, Alexandria, for defendant-appellant.
J. Edward Knoll, Dist. Atty., Marksville, for plaintiff-appellee.
Before STOKER, DOUCET and KING, JJ.
STOKER, Judge.
As directed and authorized by the Louisiana Supreme Court 572 So.2d 81 we reconsider our holding on original hearing in this case which is set forth in State v. Jeansonne, 567 So.2d 802 (La.App.3d Cir.1990). We find that the record we considered was defective. On the basis of the defective record we reversed the defendant's conviction of incest and remanded the case for a new trial. The Louisiana Supreme Court reversed and set aside our ruling and remanded the case to us with instructions. We now affirm the defendant's conviction.

THE DEFICIENT RECORD
As our opinion at 567 So.2d 802 reflects, we found (on the basis of the record we considered) that the trial judge erred in admitting into evidence a written medical evaluation report prepared by Dr. S. Moore which he made for the Office of Human Development, Division of Children, Youth and Family Services. Our holding in this regard was correct and we adhere to it. However, after the defective record was corrected we noted that another part of the record sets forth Dr. Moore's findings. These findings appear on one of the pages of the six-page certified copy of the record of the Huey P. Long Regional Medical Center (S-1) pertaining to Wendy Ann Jeansonne (WAJ). Because this certified hospital record was admissable under LSA-R.S. 13:3714, the report of Dr. Moore made to the Office of Human Development was merely repetitive.
We did not note the information contained in the hospital report from Huey P. Long Medical Center (S-1) because the page on which the information was recorded by Dr. Moore was defective. It was not properly printed in the duplicating process *1012 in the record which we considered. Following the rendition of our opinion on original hearing on October 3, 1990, (the opinion reported at 567 So.2d 802), the State discovered the fact that the page of the hospital record had been defectively reproduced. As the time for applying for rehearing before this court had expired, the State applied to the Louisiana Supreme Court for extraordinary relief. On January 11, 1991, the Louisiana Supreme Court granted the State relief and issued the following order:
"January 11, 1991
"GRANTED.
"On applicant's representation that the record on appeal contained an incomplete copy of the six-page hospital record introduced as State's Exhibit S1, omitting that part of the exhibit containing the emergency room evaluation and diagnosis, the judgment of the court of appeal is reversed and set aside and the case is remanded to the court of appeal for clarification and correction of the record, if appropriate, and reconsideration of the issues presented on appeal on the record as clarified or corrected."
In compliance with this order we determined that one of the two records of trial forwarded to this court in connection with the appeal contained the defectively duplicated page, and unfortunately that record was the record used by us. We now set forth in detail the facts concerning the defects and the information which the proper record discloses.

ASSIGNMENT OF ERROR NO. 1

(Reconsidered on the Basis of the Corrected Record)
By the first Assignment of Error, defendant challenges the admissibility of S-1, the hospital records.
The victim, the defendants' twelve-year-old daughter, WAJ, did not tell anyone about the crime until one month later. Her mother took her to Huey P. Long Regional Medical Center emergency where WAJ was examined by Dr. Moore. Dr. Moore's emergency room report and the lab tests comprise the six pages of certified hospital records in S-1. This certified hospital record was properly admitted in evidence pursuant to La.R.S. 13:3714. Also included in S-1, but not a certified hospital record and therefore not admissible, was a four-page report by Dr. Moore sent to the Office of Human Development, Division of Children, Youth and Family Services. This four-page report is easily distinguishable from the other six-page hospital report.
When this appeal was originally considered, the photocopy of S-1 was not a complete copy of the original exhibit. Part of the page containing the emergency room doctor's evaluation and diagnosis of WAJ failed to print about half-way down the page. The original report considered by the court stated, in pertinent part:
"12 yo WF presents c/o rape by father. Rape occurred one month ago. See white sheet for details. Child now has"
The complete report states, in pertinent part:
"12 yo WF presents c/o rape by father. Rape occurred one month ago. See white sheet for details. Child now has vaginal D/C and lower abd. pain.
PE. Alert in no resp. distress.
Pelvic: hymen irregular c preponderence of tags inferiorly. opening 1½ cm. yellowish mucoid discharge in vaginal vault and around vulva, no tears or ulcerations. 0 cervical motion tenderness.
Working Diagnosis
1) Sexual abuse 2) vaginitis"
Conceivably the "white sheet" referred to in the quotations set forth above may have been intended by Dr. Moore as a reference to his four-page report, meaning that he intended to incorporate it in the hospital report. However, the four-page report is dated January 19, 1989, whereas the hospital record page in question is dated two days earlier.
In the original opinion of State v. Jeansonne, supra, this court stated:
"The trial judge specified three reasons in his oral reasons for finding defendant guilty of incest: (1) the credibility of the victim's testimony, (2) testimony by Dr. Lonowski as to the victim's psychological injury, and (3) the physical evidence that *1013 the victim had engaged in intercourse. The only evidence that the victim had previously engaged in intercourse was the finding of Dr. Moore, resulting from his physical examination of the victim one month after the alleged incident, and the victim's own testimony. Thus, the objective physical finding in Dr. Moore's report was not merely cumulative. Dr. Moore's report seems to have contributed to defendant's conviction. We cannot agree that its admission was harmless beyond a reasonable doubt. Although it might be argued that there is other sufficient evidence to support defendant's conviction, the Louisiana Supreme Court has clearly held that a violation of the accused's constitutional right of confrontation is reversible error under LSA-C. Cr.P. art. 921."
This court now has before it the completely printed report of the Emergency Room examination of WAJ by Dr. Moore. The working diagnosis of the emergency room doctor was "1) sexual abuse 2) vaginitis." The report of the pelvic examination is quoted above. It contains objective physical findings which support the allegations of WAJ of prior sexual intercourse.
Therefore, in light of the complete emergency room report of Dr. Moore, this court should reconsider whether the admission of the four-page Moore report to the Office of Human Development was reversible error.
It is apparent that the four-page Moore report did not constitute the sole basis for the defendant's conviction. Dr. Moore's finding of sexual abuse of WAJ was also stated in the working diagnosis of the emergency room report which was properly admitted. Also, the erroneous admission of the four-page Moore report was harmless error since it was simply repetitive of the information given in the certified hospital record presented at trial. Admission of hospital records pursuant to La. R.S. 13:3714 is not a violation of defendant's constitutional guarantee of the right to confrontation. State v. Wientjes, 341 So.2d 390 (La.1976). LSA-R.S. 13:3714 gives a defendant the opportunity to traverse the makers of the medical records, and it is not the duty of the state to subpoena the doctor who made the report. State v. Mayeux, 526 So.2d 1243 (La. App.3d Cir.), writ denied, 531 So.2d 262 (La.1988).
As to those records properly admitted pursuant to La.R.S. 13:3714, there is no violation of defendant's constitutional right to confrontation. Defendant could have called Dr. Moore to testify and he did indicate that he may.
The four-page Moore report was erroneously admitted. The question is now one of harmless error or reversible error. The test, as set forth in State v. Green, 493 So.2d 1178, at 1185 (La.1986), is whether there is a reasonable possibility that the evidence complained of might have contributed to the defendant's conviction and whether the court can declare a belief that the error is harmless beyond a reasonable doubt. See also, State v. Walters, 523 So.2d 811 (La.1988).
Dr. Moore compiled both the emergency room report and the four-page report to the Office of Human Development. The four-page report, consisting of the initial examination of WAJ and the follow-up of lab test results, contains the same information as the hospital records; however, the four-page report goes into more details about the crime as related to Dr. Moore by WAJ. Most of these details were also given by WAJ during the trial. Defendant referred to the Moore report and WAJ's account of the crime during his cross-examination of WAJ.
BY MR. GRAVEL: When he got on top of you, at that point in time, you said that you thought that he penetrated you; that it was painful. There's also some documentation in the records said you didn't know whether or not he penetrated you. I believe you told Dr. Moore that. Please bear with me, because that's why I asked you if you understood about, I guess an erection or a male penis being hard or soft. Can you tell the court whether or not it was erect, and whether or not he penetrated you with an erected penis?
*1014 BY WAJ: I don't understand what you are talking about?
BY MR. GRAVEL: You say that he penetrated you. How do you know that?
BY WAJ: I'm not sure what it is.
BY MR. GRAVEL: You're not sure what penetration is?
BY THE COURT: You may ask it another way, because I don't know if she knows the word.
BY MR. GRAVEL: Penetration basically means that he puts, an individual puts, his male anatomy into the female's vagina.
BY WAJ: OK. I understand.
BY MR. GRAVEL: Do you understand what that means?
BY WAJ: Yes sir.
BY MR. GRAVEL: Did that happen?
BY WAJ: Yes sir.
The trial judge found WAJ's testimony, including her account of the crime, credible. Those details of the crime found in the four-page Moore report are simply repetitive of WAJ's testimony given in court. There is no evidence in the record to indicate that the trial court considered the four-page Moore report in determining witness credibility or in ultimately finding defendant guilty of incest.
Applying the harmless error test as adopted by the Louisiana Supreme Court in State v. Green, supra, we find that the erroneous admission of the four-page report was harmless beyond a reasonable doubt.

ASSIGNMENT OF ERROR NO. 2

Sufficiency of the Evidence
Defendant next contends on appeal that there was insufficient evidence to support his conviction of incest. We disagree.
LSA-R.S. 14:78 provides in pertinent part:
"§ 78. Incest
"A. Incest is the marriage to, or sexual intercourse with, any ascendant or descendant, brother or sister, uncle or niece, aunt or nephew, with knowledge of their relationship."
The State adduced testimony by the victim and the psychologist who counseled her to establish the victim's account of the incident and her credibility. The psychologist, Dr. Lanowski, testified that he believed the victim to be telling the truth, due to the absence of certain indicia of falsifying and because her account of the incident was credibly detailed. He stated that the victim presented the characteristics of suffering from the child sexual abuse syndrome. Moreover, Dr. Lanowski stated that the other members of her therapy group accepted her account as true.
The State also presented medical evidence to establish the fact that the victim had previously engaged in intercourse.
Defendant presented his own testimony and that of other family members to refute the victim's account of the circumstances leading up to the incident. Moreover, defendant and his wife each related accounts of a prior accident which injured defendant and allegedly interfered with his ability to engage in sexual intercourse. However, no medical evidence was presented to substantiate this claim.
The determination of credibility is a function of the trier of fact. When there is conflicting testimony as to factual matters, the determination of credibility of witnesses is within the sound discretion of the trier of fact and such determination is entitled to great weight on appeal. State v. Robertson, 421 So.2d 843 (La.1982); State v. Barrett, 544 So.2d 654 (La.App.3d Cir.), writ denied, 551 So.2d 1336 (La.1989). The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Butters, 527 So.2d 1023 (La.App. 1st Cir.1988), citing State v. Richardson, 459 So.2d 31 (La.App. 1st Cir.1984).
The trial judge stated in his reasons for judgment that he found the victim's testimony to be credible and acknowledged that a case of this type largely turns on credibility determinations. We cannot find that the trial judge manifestly erred in giving more weight to the victim's testimony, given the medical evidence which supports her testimony. Moreover, viewing the evidence *1015 in the light most favorable to the prosecution, we hold that there is sufficient evidence to support defendant's conviction. See State v. Butters, supra; State v. Forman, 466 So.2d 747 (La.App. 4th Cir.1985).

ASSIGNMENTS OF ERROR NOS. 3 AND 4

Sentence
Finally, defendant contends on appeal that the trial judge erred in failing to follow the sentencing guidelines of LSA-C. Cr.P. art. 894.1 and in imposing an excessive sentence.
LSA-C.Cr.P. art. 894.1 requires the sentencing judge to consider statutory guidelines of aggravating and mitigating factors in deciding on an appropriate sentence. The sentencing judge need not articulate every circumstance or read through a checklist of the items listed in order to comply with the requirements of Article 894.1. State v. Davis, 448 So.2d 645 (La.1984); State v. Sepulvado, 367 So.2d 762 (La.1979).
In the instant case, the trial judge expressly considered defendant's lack of a prior criminal history, his physical disability, the fact that he received Social Security benefits, and the many personal recommendations submitted on his behalf. He also considered the seriousness of the offense and expressed concern for the fact that the crime was committed against defendant's 12-year-old daughter. Finally, the trial judge stated that he would set an example so that other people in the community would understand that incest is wrong.
We find that the trial judge adequately considered the sentencing guidelines of Article 894.1 in imposing sentence. He expressly considered the mitigating factors. Consideration of whether incarceration is appropriate for defendant is reflected in the trial judge's reasoning.
Defendant faced a maximum possible sentence of fifteen years. Defendant received a five-year sentence. We note that, with good behavior, defendant will be eligible for parole after serving one-third of his sentence. LSA-R.S. 15:574.4. We do not find the sentence to be so disproportionate to the crime as to shock our sense of justice.

CONCLUSION
For the reasons given, the conviction and sentence are affirmed and reinstated. Costs of this appeal are assessed to defendant-appellant.
AFFIRMED.
KING, J., dissents for the reasons assigned.
KING, Judge, dissenting.
I respectfully dissent, being of the opinion that the evidence does not prove beyond a reasonable doubt the guilt of the defendant when reviewed in light of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983). For this reason I would vote to reverse the defendant's conviction and sentence.