758 So.2d 313 (2000)
STATE of Louisiana
v.
Henry Nathan JUDGE.
No. 99-1109.
Court of Appeal of Louisiana, Third Circuit.
March 1, 2000.
*314 Edward K. Bauman, Lake Charles, LA, Counsel for Defendant.
Lori A. Landry, New Iberia, LA, Assistant District Attorney, for State.
Court composed of Judge NED E. DOUCET, Jr., Chief Judge, BILLIE C. WOODARD and MICHAEL G. SULLIVAN, Judges.
DOUCET, Chief Judge.
The Defendant, Henry Nathan Judge, appeals his conviction for sexual battery.
*315 The seventeen-year-old victim, L.L. alleges that on the morning of July 11, 1998, while she was asleep in her mother's bed, the Defendant, her great uncle, entered the room, kissed her, and without her consent, touched various parts of her body, including her vagina.
On October 1, 1998, the Defendant was charged by bill of information with sexual battery, a violation of La.R.S. 14:43.1. The Defendant was tried by a jury on January 11 and 12, 1999 and found guilty as charged. The judge ordered a pre-sentence investigation report be prepared. On February 23, 1999, the Defendant was sentenced to eight years at hard labor without the benefit of parole, probation or suspension of sentence. He now appeals.

SUFFICIENCY OF THE EVIDENCE
The Defendant first contends that the State failed to prove beyond a reasonable doubt that the Defendant intentionally committed a sexual battery on L.L. La.R.S. 14:43.1 sets out the elements of the crime of sexual battery, as follows:
A. Sexual battery is the intentional engaging in any of the following acts with another person, who is not the spouse of the offender, where the offender acts without the consent of the victim., or where the other person has not yet attained fifteen years of age and is at least three years younger than the offender:
(1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender;....
(2) The touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim.
The record establishes that L.L. was seventeen years old at the time of the alleged offense and that Judge was thirty-six years old. Further, testimony was adduced as to the events which led to the charge.
In July of 1998, L.L. was living with her mother in New Iberia, Louisiana. L.L. initially affirmed that the Defendant was living with them, but she later testified that he visited frequently, but would not spend the night. One morning in July of 1998, while her mother was gone from the home, L.L. was asleep in her mother's bed when she felt the Defendant kissing her face. She said she turned over and "heard him say something about you're turning your head now" and he continued to kiss her. According to L.L., the Defendant closed the door, got on top of her, kissed her face again and then touched her vagina and her stomach with his hand. L.L. testified she was asleep during this episode, but woke up when she felt the Defendant "touching [her] down there." At that point, she saw his face and tried to jump out of the bed. The Defendant got out of the bed and blocked the door, asking L.L. not to tell anyone what had happened. L.L. then attempted to get out on the other side, but she passed out. According to L.L., the Defendant picked her up, put her in the bed and got on top of her again. She testified that she "felt him get off of me because that's when I got up and I felt my head because it was hurting; I had knot." She then heard his belt buckle rattle and felt his "lower skin on [her] lower skin." She later explained that she felt his legs on her. At this point, L.L. passed out again and although not awake, she felt him touching her between her legs. The Defendant proceeded to feel her breasts. When L.L. got up, she felt that the Defendant had ejaculated on her right leg. She then ran to the bathroom. When asked what she did in the bathroom, L.L. responded, "[c]rying, throw up, and wash myself off." Hearing the Defendant at the bathroom door, she broke a mirror and a trash can. When she heard his voice a second time, she threw up again. During later testimony, L.L. confirmed that the Defendant, without her consent, touched her vagina twice with his hand.
After leaving the bathroom, L.L. ran to her sister's room and told her what happened. *316 When asked what happened next, L.L. responded, "as I remember hehe asked my sister what was wrong with me; and we went outside to calm down." Approximately ten minutes later, while the Defendant was still at the house, L.L.'s mother returned home and was told what had happened. L.L.'s sister called the police. According to L.L., during the attack, she screamed the Defendant's name, thinking someone would wake up, but no one did.
L.L. was questioned about her prior relationship with her uncle. She testified that they had "an uncle and niece type relationship like a friend." In the past, the Defendant had complimented her about how she was growing up and had kissed her on the face. This made L.L. a little uncomfortable, so she asked her mother to ask him to stop; however, she affirmed that the Defendant never said anything to make her think he would molest her.
On appeal, the Defendant questions the credibility of L.L.'s testimony since she admits she was at least partly asleep or unconscious during some of the time the assault was allegedly occurring. He also asserts that it is unlikely that the three other occupants of the house (L.L.'s sister, brother and his friend) could have remained asleep if L.L. was in fact shouting and throwing things as she alleges, especially in light of the testimony of Detective Armatta that the house was quite small and L.L.'s sister's bedroom was only about four or five feet from the one where the alleged assault occurred.
On cross-examination, L.L. was questioned extensively about the details of the incident in question. She acknowledged that in her prior statement, she said she was in a deep sleep when her uncle started kissing her. She said she was "in between there" and was asleep but could not get up when he was kissing her. Because she had stayed up until 2:00 or 3:00 a.m., she was really tired. According to L.L., she woke up when she turned over. When initially asked how she knew it was the Defendant kissing her, L.L. said, "[b]ecause he was only the male to my house and he's the only one kisses me in my face." Defense counsel asked L.L. if it could have been her brother or his friend, she explained it would not be them because they do not go into her mother's room when she is not home. When asked how she knew it was the Defendant if she was sleeping, L.L. said she heard his voice when he said, "Oh, you're turning over." L.L. was questioned extensively about her state of awareness during the episode with her uncle and about her prior statement to Detective Armatta, but affirmed that she remembered the events accurately in spite of her being partially asleep or unconscious at the time they occurred. Further, she states that she woke up during the assault and was then able to get away. L.L.'s mother testified that it did not surprise her that no one in the house was woken up by noise made by L.L. because all her children are very heavy sleepers.
The standard of review to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983).
According to State v. Jeansonne, 580 So.2d 1010 (La.App. 3 Cir.), writ denied, 584 So.2d 1170 (La.1991), the trier of fact may accept or reject, in whole or in part, any portion of a witness's testimony. Thus, a rational trier of fact might conclude that parts of [the witness's] testimony are true, while others are less credible. The testimony of one witness, if believed by the trier of fact, is sufficient to support the requisite factual conclusion in the absence of internal contradictions or irreconcilable conflict with the physical evidence. State v. Henry, 95-428 (La.App. 3 Cir. 10/4/95); *317 663 So.2d 309, writ denied, 96-0681 (La.5/16/97); 693 So.2d 793. The fact that the record contains evidence which conflicts with the testimony accepted by the trier of fact does not render the evidence accepted by the trier of fact insufficient. State v. Tompkins, 403 So.2d 644 (La.1981), appeal after remand, 429 So.2d 1385 (La.1982).
State v. Bernard, 98-994, p. 7 (La.App. 3 Cir. 2/3/99); 734 So.2d 687, 691.
Despite L.L.'s varying degrees of consciousness during the attack, her testimony indicates she was awake when the Defendant touched her the first time. L.L.'s testimony, obviously believed by the jury, was sufficient to prove that the Defendant, her uncle, touched her vagina with his hand without her consent. Therefore, we conclude that the record supports the conviction.

MEDICAL HISTORY
The Defendant contends the trial court erred in refusing to allow Defense counsel to question L.L. about her prior medical history.
The State also sought a ruling on whether L.L.'s past treatment for depression was admissible. Defense counsel explained that L.L. had been treated for mental problems in the past and had suffered from hallucinations; however, they did not know whether they were related to her medication. The State contended the hallucinations were caused by medication L.L. was taking and they did not feel it was relevant. Additionally, the State argued the probative value would be substantially outweighed by the prejudicial effect.
He further excluded evidence regarding L.L.'s past medical history because neither side intended to introduce medical records and there were no doctors or other treatment providers expected to testify.
In his brief, Defense counsel argues that the victim's past medical history was important to show the "alleged attempted rape by Henry Lewis" was a figment of the imagination of a young girl suffering from mental problems, depression, hallucinations and blackouts. Because further inquiry into the victim's medical history was not allowed, appellate counsel contends trial counsel was unable to attack the credibility of the only eyewitness to the incident. Defense counsel claims this severely prejudiced the Defendant's case.
The Defendant made a proffer of evidence in this regard. The proffered evidence shows that in 1995 or 1996, L.L. was treated at Cypress Hospital with medication for depression. When asked if she recalled having hallucinations, L.L. said she had them right after she got out of the hospital and they were caused by the medication. She could not sleep at night because she would dream about "what happened in the hospital and what happened." However, L.L.'s testimony indicates that the hallucinations occurred only while she was hospitalized. According to L.L., she stopped taking the medication after she got out of the hospital and she has not had any hallucinations since that time. However, she suffers from depression about every two months. She does not take medication for the depression. She stated that she had never blacked out before this incident.
This proffered evidence did not show the victim's medical history was relevant to show the attack by her uncle was a figment of her imagination. The hallucinations were arguably medically induced and have not occurred since shortly after her release from the hospital, at the latest. There was no evidence that she previously suffered from blackouts or that her bouts with depression could have caused her to imagine this incident. Therefore, we conclude that the trial judge did not err in refusing to allow the Defendant to question the witnesses about the victim's prior medical history.

HISTORY OF RAPE ACCUSATIONS
At the beginning of trial, the State filed an oral Motion in Limine pursuant to La.Code Evid. art. 412 to prohibit the introduction *318 of evidence regarding a previous unreported rape. In arguing her position to the judge, the prosecutor explained that on July 12, 1998, L.L. gave a statement to the police indicating she had previously been raped, but the rape had gone unreported. This information was corroborated by L.L.'s mother. The Defendant contended evidence of the prior alleged rape should be admitted because there was no evidence that it occurred and he believed both incidents were figments of L.L.'s imagination. The Defendant argued that L.L. had a pattern of saying she was raped when in fact she was not.
The judge found evidence of any prior sexual conduct between L.L. and persons other than the Defendant was protected by the Rape Shield Statute and was inadmissible. He felt that the exception for "close proximity apparently in time or sequence of events" did not apply.
At the close of the taking of evidence, while the jury was deliberating, the Defense proffered the following testimony of L.L.:
L.L. testified that she told Detective Armatta that she had previously been raped. The alleged prior rape occurred in 1996, when L.L. was sixteen. The perpetrator was an ex-boyfriend and he raped L.L. while she was babysitting at a neighbor's house. L.L. explained that she did not know she had been raped because she was a virgin and it took her several months to tell anyone what had happened.
The Defendant argues the "legitimate state interest" fostered by the Rape Shield Statute would not have been impaired by the admission of evidence concerning the past unreported "alleged rape." The Defendant's position is that an alleged rape is not past sexual behavior within the meaning of La.Code Evid. art. 412 and that admission of evidence concerning the "alleged rape" would have helped reveal a specific pattern of behavior by the victim.
The supreme court recently addressed this issue in State v. Smith, 98-2045 (La.9/8/99); 743 So.2d 199. In appealing that case, the defendant contended the trial court erred in refusing to allow him to introduce evidence of prior false allegations of molestation made by the victim. The appellate court found the trial court had not erred, but the supreme court disagreed, finding the rape shield statute inapplicable:
Because the evidence defendant attempted to introduce did not concern the victim's prior sexual behavior, history or reputation for chastity, we conclude that prior false allegations of sexual assault by the victim do not constitute "past sexual behavior" for purposes of our rape shield statute. We hold, therefore, that Article 412 is inapplicable in sexual assault cases where defendant seeks to question witnesses regarding the victim's prior false allegations concerning sexual behavior for impeachment purposes. Consequently, no Article 412 hearing is required when defendant seeks to introduce such evidence.
. . . .
Instead, when considering the admissibility of such evidence, the question for the trial court is not whether it believed the prior allegations were false, but whether reasonable jurors could find, based on the evidence presented by defendant, that the victim had made prior false accusations. See Huddleston v. United States, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988) (in ruling on the admissibility of other crimes evidence, the district court "neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance, [but] simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact ... by a preponderance of the evidence").
Id. at p. 6; 743 So.2d at 203 (footnotes omitted)(alteration in original).
*319 In the present case, there was no such evaluation of evidence by the trial court, although he permitted a proffer which consisted of the victim's testimony. However, the evidence proffered by the Defendant was not sufficient for a reasonable juror to find that the victim had made a prior false allegation. No evidence was presented to rebut the victim's testimony that she was previously raped. The fact that she did not report the rape to the police does not, by itself, indicate that the event did not occur. Therefore, we find no error in the trial court's decision to exclude evidence of prior rape allegations by L.L.

INEFFECTIVE ASSISTANCE OF COUNSEL
On appeal the Defendant contends that his trial counsel was ineffective in failing to file a motion to reconsider sentence, in failing to subpoena L.L.'s medical records and in failing to interview her physicians.
A claim of ineffective assistance of counsel is properly raised in an application for post-conviction relief. This allows the trial judge an opportunity to order a full evidentiary hearing on the matter. State v. Burkhalter, 428 So.2d 449 (La.1983). However, where the record contains evidence sufficient to decide the issue and the issue is raised by an assignment of error on appeal, it may be considered. State v. James, 95-962 (La. App. 3 Cir. 2/14/96); 670 So.2d 461.
State v. Francis, 99-208 (La.App. 3 Cir. 10/6/99); 748 So.2d 484.
The current record contains insufficient information to address the Defendant's claim that his trial counsel was ineffective in failing to subpoena L.L.'s medical records and interview her physicians. In trial counsel's affidavit, she states that she represented the Defendant "over and above the level of competency normally demanded of attorneys in criminal cases" and that she met with and advised the Defendant "on all aspects of the case." However, the record contains no reasons for counsel's actions. An evidentiary hearing, conducted as part of a post-conviction relief proceeding, would allow the lower court to develop a full record on this matter. Given the record before us, it is impossible to do more than speculate why counsel did not interview the victim's physicians and subpoena her medical records. Counsel's trial strategy is more properly addressed on application for post-conviction relief. State v. Guillory, 95-383 (La.App. 3 Cir. 1/31/96); 670 So.2d 301. Therefore, we will not consider these claims on appeal.
However, the record is sufficient to address the Defendant's claim that counsel was ineffective in failing to file a motion to reconsider sentence. Attached to the State's brief is a notarized affidavit of trial counsel. In the affidavit, she explains a motion to reconsider was not filed because the Defendant advised her shortly after trial that "he would be hiring another attorney to pursue his post-conviction relief" and that he no longer needed her services.
A failure to file a motion to reconsider sentence does not in itself constitute ineffective assistance of counsel. However, if the defendant can "show a reasonable probability that, but for counsel's error, his sentence would have been different," a basis for an ineffective assistance claim may be found. State v. Hayes, 97-1526 (La.App. 1 Cir. 5/15/98); 712 So.2d 1019, 1022.
State v. Texada, 98-1647, p. 18 (La.App. 3 Cir. 5/5/99); 734 So.2d 854, 864.
For violation of La.R.S. 14:43.1, offenders face a sentence with or without hard labor, without benefit of parole, probation or suspension of sentence of up to ten years. The Defendant received a sentence of eight years at hard labor without benefit of parole, probation or suspension of sentence, an upper range sentence.
The record indicates that the trial judge considered the factors set forth in La.Code Crim.P. art. 894.1 before he sentenced the Defendant, as follows:

*320 All of these factors considered and in compliance with Article 894.1 of the Code of Criminal Procedure and considering the guidelines, sentencing guidelines of that Article, particularly that there would be an undue risk that during the period of suspension or probation that the defendant would commit another crime and, in fact, this is the third felony offense that the defendant has been convicted of, that he is in need of correctional treatment and a custodial environment that can be provided most effectively by his commitment to an institution; that the crime was a serious crime, that it affected the victim and impacted the victim as is indicated by the statements which have already been introduced in evidence; and that a lesser sentence would deprecate the seriousness of the crime. And considering that the law provides for a sentence of up to ten years at hard labor without the benefit of probation, parole, or suspension of sentence it's the sentence of the Court that, Mr. Judge, you serve a term of imprisonment at hard labor for eight years without benefit of parole, probation, or suspension of sentence; and for that purpose you are remanded into the custody of the Department of Safety and Corrections.
The record supports the Defendant's sentence and it is not grossly out of proportion to the severity of the crime nor a needless and purposeless imposition of pain and suffering. Because the Defendant has failed to show that a motion to reconsider the sentence would have resulted in a different sentence, the failure of Defendant's counsel to file a motion to reconsider sentence does not constitute ineffective assistance of counsel.

CONCLUSION
For these reasons, the conviction and sentence are affirmed.
AFFIRMED.